724 F.2d 301
 Sal GALLUCCIO, Plaintiff-Appellant,
v.
Edwin HOLMES, Shield No. 514, individually and as a Nassau
County Police Officer; Captain Colletti, individually and
as an employee of the Nassau County Correction Center; and
Doctor Zingaro, individually and as an employee of the
Nassau County Medical Center, Defendants-Appellees.
 No. 68, Docket 83-7220.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 1, 1983.
Decided Dec. 13, 1983.
 
 Marvin Zevin, Yannelli & Zevin, Mineola, N.Y., for plaintiff-appellant.
 Edward G. McCabe, County Atty. of Nassau County, Mineola, N.Y., for defendants-appellees Colletti and Zingaro.
 Robert M. Schaufeld, Axelrod, Cornachio, Famighetti & Capetola, Mineola, N.Y., for defendant-appellee Holmes.
 Before KEARSE, CARDAMONE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Plaintiff Sal Galluccio brought this action under 42 U.S.C. Sec. 1983 seeking damages from nine defendants, including two police officers, two corrections officers and five doctors, for alleged violations of his fourth, fifth, eighth and fourteenth amendment rights. The case proceeded to trial before a jury but at the close of Galluccio's main case, the district court entered a directed verdict pursuant to Rule 50(a), Fed.R.Civ.P. This appeal, limited to the judgments entered for a police officer, Holmes, and a corrections officer, Colletti, and Doctor Zingaro, followed.
 
 
 2
 We affirm in part, reverse in part and remand for a new trial.
 
 BACKGROUND
 
 3
 Since a motion for a directed verdict was granted against Galluccio, we must view the evidence in the light most favorable to him. At the relevant time, Galluccio was serving an intermittent one year sentence at the Nassau County Correctional Center. By the terms of his sentence, Galluccio reported to the Center every Saturday at 6:00 P.M. and remained there until his release the following Tuesday at 6:00 A.M. When Galluccio arrived at the Correctional Center on Saturday, July 19, 1980, he was met by appellees Holmes and Colletti and served with a search warrant authorizing an examination by a qualified physician of Galluccio's anal cavity for controlled substances to take place between 6:00 P.M., July 19 and 6:00 A.M., July 22.[1] Appellant concedes the validity of the warrant but contends that the appellees acted unreasonably in executing it.
 
 
 4
 After being shown the warrant, read his Miranda rights and asked if he was carrying any contraband, Galluccio was strip-searched by Holmes, Colletti and two other correctional officers. When no contraband was discovered, Galluccio was handcuffed and taken to the Nassau County Medical Center Emergency Room by the officers. They presented the warrant to the hospital staff and requested a physician competent to execute it.
 
 
 5
 Galluccio was placed in an examination room, where a Doctor Wing attempted to do first a digital and then a proctoscopic examination of appellant's anal cavity. Galluccio testified that the physician's efforts caused considerable pain and led him to resist further examination. Because Galluccio was resistant and uncooperative, Doctor Wing was unable to perform either method of examination. The doctor and several other physicians conferred with the officers and concluded that examination was impossible given Galluccio's resistance and might injure him if forced.
 
 
 6
 Galluccio was then seen by Doctors Zingaro and Friedman. Friedman thought that Galluccio should be admitted to the tenth floor prison ward where Galluccio would in time have to expel anything secreted in his anal cavity. Doctor Zingaro thereafter wrote the following note:
 
 Plan--Admit
 Laxatives
 Restrain
 
 7
 Doctor Zingaro, a first year surgical resident, testified that he was present when Galluccio arrived in the emergency room, that he performed an attenuated physical examination and that he requested permission to conduct a rectal exam, which Galluccio refused. Doctor Zingaro did not participate in the examinations attempted by Doctor Wing. There is no evidence that Doctor Zingaro participated in Galluccio's care once he left the emergency room.
 
 
 8
 Thereafter, Galluccio was handcuffed to a stretcher and transported to the x-ray department where his abdomen was x-rayed. The films failed to show any radio-opaque object in Galluccio's lower gastrointestinal tract or rectum. However, a non-opaque object such as a drug-filled condom may or may not be detectable by x-ray.
 
 
 9
 Galluccio was then placed in a two bed cell in the tenth floor prison ward at the Medical Center. New orders were written by an unidentified person admitting him to in-patient status and directing, inter alia, that he be maintained on bed rest, kept restrained, given a clear fluid diet and laxatives and prohibited from using the bathroom.
 
 
 10
 Galluccio was then shackled to the bed by his arms, and intermittently thereafter by one or both legs, presumably so that he would not remove any secreted drugs from his anal cavity and possibly swallow them. He remained shackled for most of the next fifty-six hours, until his discharge at 6:00 A.M. Tuesday, July 22, 1980. During this period laxatives were administered orally, sedatives were injected intramuscularly and an enema was given per rectum. A bedpan was at times placed underneath appellant as he lay restrained in a supine position. He was repeatedly requested by appellees Holmes and Colletti to have a bowel movement, which they indicated would terminate the search. He was allowed out of bed only to urinate in the presence of a correctional officer and once to visit with his girlfriend.
 
 
 11
 On Sunday, July 20, two hours after being given the enema, Galluccio evacuated his bowels into the bedpan. The evacuation consisted of brown fluid with a few very small pieces of formed stool. No evidence of contraband was detected. Colletti and Holmes decided that this was not a full bowel movement. Both officers then left the Medical Center and did not see Galluccio again prior to his release Tuesday morning.
 
 
 12
 Galluccio remained shackled to the bed for most of the next forty hours. He testified that he was quite uncomfortable during the hospital stay and that he suffered pain in his right shoulder that caused him to cry. The nurses' notes support this testimony and also indicate that on Monday, Galluccio was seen by a surgical resident who noted an "extremely sore" deltoid muscle and attributed it to muscle strain. Galluccio received an injection for this pain at about 10:00 P.M. that evening but remained in restraints. Galluccio also testified that Holmes had earlier cursed at him and pushed him while he was shackled, causing strain on his extremities.
 
 
 13
 The warrant expired at 6:00 A.M. on Tuesday, July 22, as did Galluccio's sentence for that weekend, and he was released from custody and from the Medical Center.
 
 
 14
 The district court, characterizing Galluccio's testimony as "strained", ruled that the evidence could not support a finding that defendants had violated 42 U.S.C. Sec. 1983 and that Galluccio's refusal to cooperate or permit the examination was without justification and wrongful and necessitated the administration of the enema, laxatives and other drugs.
 
 DISCUSSION
 
 15
 On appeal, a district court's grant of a directed verdict will be upheld if "without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." Brady v. Southern Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943), quoted in Epoch Producing Corporation v. Killiam Shows, Inc., 522 F.2d 737, 742 (2d Cir.1975), cert. denied, 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976). If reasonable persons could arrive at a contrary verdict, the case must be submitted to the jury. Id. at 742-43; see National Auto Brokers v. General Motors Corp., 572 F.2d 953, 956 (2d Cir.1978), cert. denied, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).
 
 
 16
 Appellees are not shielded by the warrant from liability under 42 U.S.C. Sec. 1983 if the warrant was executed in an unreasonable manner. Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir.1979); United States v. Murrie, 534 F.2d 695, 698 (6th Cir.1976). We believe the evidence raised a fair issue of fact as to whether the search warrant was reasonably executed. While the warrant authorized a manual and proctoscopic examination and justified use of laxatives and an enema in view of Galluccio's resistance to the examination, the record raises a question for the jury as to the reasonableness of the almost continuous shackling of Galluccio for fifty-six hours. A jury might reasonably find that the authority granted by the warrant was at some point exceeded by the prolonged shackling after the negative results of the x-rays, the laxatives and the enema. The fact that the warrant specified execution between 6:00 P.M., Saturday, and 6:00 A.M., Tuesday, did not authorize continuous procedures during that period unless they were reasonably related to effectuating the purpose of the warrant. We believe that a jury might reasonably determine that the shackling, which lasted a full forty hours after the laxatives and enema were administered, at some point ceased to be likely to lead to the discovery of contraband and was thus not authorized by the warrant. Since such shackling was not otherwise justified, that finding would render those responsible for it liable.
 
 
 17
 Appellant has not presented sufficient evidence to sustain his claim against Doctor Zingaro. The evidence offered showed only that he briefly examined Galluccio in the emergency room and wrote the medical plan to admit, restrain and administer laxatives to Galluccio. However, the actual admitting orders and directives for inpatient care were written and carried out by others. Doctor Zingaro thus was not responsible for any of the possible violations of Galluccio's rights. Holmes and Colletti, on the other hand, had a responsibility to monitor the treatment of Galluccio and the power to terminate the search.
 
 
 18
 We affirm the judgment as to Zingaro and reverse and remand to the district court for a new trial as to Holmes and Colletti.
 
 
 
 [1]
 The search warrant read in relevant part:
 YOU ARE THEREFORE COMMANDED between the hours of 6:00 p.m. on July 19, 1980 and 6:00 a.m. on Tuesday July 22, 1980, at any time day or night, to have a qualified gastroenterologist, proctologist or surgeon under hospital conditions conduct an immediate search of the anal cavity of one Sal Galluccio, while he is serving his prison sentence at the East Meadow Correctional Facility, East Meadow, New York for marijuana or any other controlled substance, and if you find such property or evidence or any part thereof, to bring it before me in the County Court, County of Nassau, State of New York, without unnecessary delay.
 Dated: Mineola, New York
 July 18, 1980
 /s/
 HON. RICHARD C. DELIN
 County Court Judge
 Sitting as a Local
 Criminal Court