**Robert PACHALY, Jr., Plaintiff,**

v.

**CITY OF LYNCHBURG, R.D. Viar, Commonwealth of Virginia, and William G. Petty, Defendants.**

**Civ. A. No. 88–0069–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 3, 1988.

---

Clifford L. Harrison, Stone & Hamrick, P.C., Radford, Va., for plaintiff.

W. Fain Rutherford, Woods, Rogers & Hazelgrove, Roanoke, Va., for William G. Petty.

Walter C. Erwin, City Attorney's Office, Lynchburg, Va., for City of Lynchburg and R.D. Viar.

## MEMORANDUM OPINION

KISER, District Judge.

This matter is before me on the Defendants' motions for summary judgment. The Plaintiff, Robert Pachaly, Jr., filed his complaint on February 16, 1988, alleging the City of Lynchburg, R.D. Viar, the Commonwealth of Virginia, and William G. Petty converted property and violated the Plaintiff's civil rights pursuant to 42 U.S.C. § 1983. On March 11, 1988, the Plaintiff filed a timely dismissal of his claim against the Commonwealth of Virginia. The remaining Defendants have moved to dismiss the Plaintiff's claims against them. Because I have considered matters outside the pleadings, I have treated the Defendants' motions as ones for summary judgment pursuant to Fed.R.Civ.P. 12(c).

### Facts

The essential facts of this dispute are as follows: the Plaintiff, Robert Pachaly, Jr., was the sole owner of Lynchburg radio station WLVA. On March 5, 1986, a Grand Jury, sitting in the Circuit Court of the City of Lynchburg, indicted the Plaintiff on two counts of larceny from the Commonwealth of Virginia, one count of larceny from an individual, and one count of assault with a motor vehicle. On March 6, 1986, the clerk of court issued arrest warrants for Robert Pachaly, and a Lynchburg magistrate issued a warrant authorizing a search for relevant books, records, and receipts contained in the WLVA radio station. Various law enforcement personnel executed the warrants during the evening of March 6, 1986. Present during the execution of the warrants were, among others, R.D. Viar, an investigator for the Lynchburg Police Department, and William G. Petty, Commonwealth Attorney for the City of Lynchburg. Besides placing the Plaintiff into custody, the attending law enforcement personnel seized approximately ten boxes of WLVA documents. Though the officers conducting the search attempted to confine themselves to books, records, and receipts contained in WLVA, apparently the offi-

cers also seized an envelope containing jewelry that belonged to the Plaintiff. Almost two weeks after his arrest, the Plaintiff recovered this jewelry from the Lynchburg Police Department.

In a motion dated March 11, 1987, the Plaintiff's defense counsel in the criminal action moved that the Lynchburg Circuit Court order the suppression and return of all items seized from WLVA on March 6, 1986. Plaintiff's defense counsel argued that the police department unlawfully seized the Plaintiff's property in what the Plaintiff's defense counsel characterized as a "fishing expedition." At the subsequent hearing on March 19, 1987, the parties argued their positions in front of the Honorable Richard S. Miller. At the close of the hearing Judge Miller requested that counsel submit, in writing, authority that counsel wished the judge to consider before ruling on the Plaintiff's motion. In a letter dated March 26, 1987, Judge Miller overruled the Plaintiff's motion to suppress and return the documents seized at WLVA, and concluded that the search of WLVA was reasonable.

On August 26 and 27, 1987, the Plaintiff was tried and acquitted on the charges of larceny from the Commonwealth of Virginia. On December 2, 1987, the charge against the Plaintiff of larceny from an individual was nol prossed. Also, on December 2, 1987, the Plaintiff was convicted of assault with a motor vehicle.

In a complaint filed on February 16, 1988, the Plaintiff, naming as Defendants the City of Lynchburg, R.D. Viar, the Commonwealth of Virginia, and William G. Petty, alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as common law conversion of WLVA's property. Specifically, the Plaintiff made the following two claims against the Defendants.[1] First, the Defendants violated the Plaintiff's constitutional rights because of the Defendants unreasonable and excessive search of WLVA. Second, the Defend-

ants converted WLVA's property. On March 11, 1988, the Plaintiff dismissed his claim against the Commonwealth of Virginia under Fed.R.Civ.P. 41. The remaining Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 12(c).

## Discussion

### A. Collateral Estoppel

All of the Defendants move for summary judgment on the Plaintiff's unreasonable and excessive search allegation arguing that collateral estoppel bars further litigation of that issue in this Court. Citing *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Defendants assert that the Plaintiff actually litigated the unreasonable search issue in the suppression hearing prior to his criminal trial, and the Plaintiff, therefore, is collaterally estopped from relitigating that issue. I am well aware that, correctly applied, the doctrine of collateral estoppel prohibits relitigation of an issue that a court of competent jurisdiction has actually and necessarily determined. *Haring v. Prosise*, 462 U.S. 306, 314–15, 103 S.Ct. 2368, 2373–74, 76 L.Ed.2d 595 (1983); Restatement (Second) of Judgments § 27 (1982). I am also aware that the Supreme Court has held that the doctrine of collateral estoppel applies in 42 U.S.C. § 1983 cases. *Allen v. McCurry, supra.* However, I am not convinced that collateral estoppel is appropriate on the facts in the case before me.

The Plaintiff argues that the state court order from the suppression hearing was interlocutory in nature. Therefore, according to the Plaintiff, the order is not valid for collateral estoppel purposes. In response, the Defendants cite, as controlling authority, Judge Parker's decision in *Western Contracting Co. v. National Surety Corp.*, 163 F.2d 456 (4th Cir.1947), for the proposition that an interlocutory ruling loses its preliminary character upon the entry of final judgment. I feel the Defendants'

---

1. The Plaintiff makes two further allegations: first, the Defendants were responsible for the excessive media coverage associated with the Plaintiff's arrest resulting in the Defendants' depriving the Plaintiff of a fair trial. Second, the Defendants utilized excessive force in arresting the Plaintiff. The Plaintiff has indicated he no longer wishes to pursue these claims so I grant summary judgment for the Defendants on those claims.

reliance on the *Western Contracting* case is misplaced. As I read Judge Parker's decision, the case merely stands for the hornbook proposition that a party cannot appeal an interlocutory order. *See id.* at 459.

Counsel have not presented, nor have I found, any controlling decisions on the legal issues presented by the facts of this case. I, therefore, turn to the Restatement for guidance. Specifically, Restatement (Second) of Judgments § 27 comment h (1982) appears to be directly on point. Comment h reads as follows:

> h. *Determinations not essential to the judgment.* If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

■ In the instant case, Judge Miller ruled on the issue of reasonableness of the Defendant's search. The resulting acquittal of the Plaintiff, however, was not dependent on Judge Miller's determination. In sum, Judge Miller's decision does not meet the threshold qualification of attaining a final determination of an issue for collateral estoppel purposes. I deny, therefore, the Defendants' motion for summary judgment on collateral estoppel grounds.

### B. City of Lynchburg

■ The City of Lynchburg moves for summary judgment arguing that under *Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the plaintiff cannot hold Lynchburg liable on the doctrine of *respondeat superior* in a § 1983 case. Instead, the City argues, the plaintiff must show that the execution of a municipal custom or policy inflicts an injury. *Id.* at 694, 98 S.Ct. at 2037. The City notes that under *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and more recently in *City of St. Louis v. Praprotnik*, — U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), a single act of a policymaking official responsible for final government policy can result in municipal liability if certain other factors are also present. I agree with the City's analysis of the law for § 1983 municipal liability.

To survive a motion for summary judgment, Fed.R.Civ.P. 56(e) requires that the plaintiff "must set forth specific facts showing that there is a genuine issue of material fact." In three cases decided in 1986, the Supreme Court began a trend toward a stricter application of Rule 56(e). *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Perhaps the language most helpful for present purposes comes from *Anderson*. In that case, the Court unequivocally stated that the "plaintiff must present AFFIRMATIVE EVIDENCE in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514 (emphasis added). Thus, to survive Lynchburg's motion for summary judgment, the Plaintiff must come forward with affirmative evidence of the existence of unconstitutional municipal policy or custom. *See Praprotnik*, — U.S. —— at ——, 108 S.Ct. at 924.

Plaintiff has filed both an affidavit and a supporting brief. The Plaintiff's supporting material, however, presents only conclusory statements with no apparent factual basis. As justification for his conclusion that a municipal policy existed condoning the allegedly illegal search and seizure within the WLVA offices, the Plaintiff boldly asserts that "only the highest officials of the City of Lynchburg Police Department could have mounted such a search and seizure." (Pachaly brief, p. 8.) Though this may be a good argument, it is

not evidence and falls short of the Rule 56 requirements for affidavits. Because the Plaintiff has failed to satisfy the dictates of Fed.R.Civ.P. 56(e), I grant summary judgment for the Defendant, City of Lynchburg.

## C. William G. Petty—Commonwealth Attorney for the City of Lynchburg

William G. Petty moves for summary judgment arguing that, as a prosecutor, the absolute immunity of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), precludes the Plaintiff's 42 U.S.C. § 1983 suit against him. In *Pachtman*, the Supreme Court held that a state prosecuting attorney, acting within the scope of his duties in initiating and pursuing a criminal prosecution, was absolutely immune from a civil suit for damages under 42 U.S.C. § 1983. *Pachtman*, 424 U.S. at 427, 96 S.Ct. at 993. However, in granting the prosecutor absolute immunity, the Court noted that it had "no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31, 96 S.Ct. at 994–96. This caveat by the Court in *Pachtman* has been the source of much litigation as various courts have struggled to determine whether a prosecutor's actions are prosecutorial in nature, warranting absolute immunity, or investigatory in nature, warranting qualified immunity.

Mr. Petty contends that he engaged in a post-indictment search of the WLVA offices that was prosecutorial in nature and conducted pursuant to a properly issued search warrant. The Plaintiff argues that during the prosecutor's search and subsequent seizure, the prosecutor exceeded the scope of his duties and actually conducted a pre-indictment narcotics search. As support, the Plaintiff concludes that the mechanics of the actual search of the WLVA offices, including, but not limited to, the use of a mobile crime laboratory and a SWAT team, leads one to the inescapable conclusion that the prosecutor was merely using his search for tax documents as a pretext search for a future narcotics indictment.

■ Initially, I note that in *Pachtman* the Supreme Court included within the protection of absolute immunity a prosecutor's decision to obtain, review, and evaluate evidence for trial. *Pachtman*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. The avowed purpose of the search of the WLVA offices was to obtain evidence to prosecute the indictment. This falls squarely within the duties of a prosecutor as delineated in *Pachtman*. Even if the search was illegal or was motivated by considerations in addition to obtaining evidence to prosecute the indictment, the prosecutor, Mr. Petty, is entitled to absolute immunity. (*Cf. Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), where absolute judicial immunity applied to a corrupt judge who was bribed to rule as he did.) Moreover, any hesitation I have in reaching this conclusion is overcome by the Plaintiff's failure again to satisfy Fed.R.Civ.P. 56(e). As stated above, the Plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514. In the present case, the Plaintiff simply makes bold assertions and reaches unsupported conclusions. On this basis, I cannot conclude that the Plaintiff has satisfied his Rule 56(e) burden. Therefore, because I find Mr. Petty's actions prosecutorial in nature, and because the Plaintiff has failed to satisfy Fed.R.Civ.P. 56(e), I grant summary judgment for the Defendant, William G. Petty.

## D. R.D. Viar—Investigator for the Lynchburg Police Department

The remaining Defendant is Investigator Viar of the Lynchburg Police Department who moves for summary judgment on the claims against him. The Plaintiff claims that during the search of WLVA Investigator Viar exceeded the authority granted him by the search warrant.

The Plaintiff, to survive this summary judgment motion, must allege sufficient factual evidence to support a conclusion

that Investigator Viar exceeded the scope of the search warrant. The crucial factor in evaluating the permissible intensity of Viar's search is determining the object of the search. The warrant that Viar was operating under authorized a search for books, records, and receipts contained in the WLVA offices. The Supreme Court has said that "the same meticulous investigation which would be appropriate in a search for two cancelled checks could not be considered reasonable where agents are seeking a stolen automobile or an illegal still." *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). *See United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (search will exceed authority of warrant unless some item described in warrant could be discovered in place being searched). Thus, the reasonableness of the search is wholly dependent on the object of the search.

 On the facts before me, I cannot conclude that a genuine issue of material fact exists regarding the reasonableness of the search of WLVA. The warrant authorized a search for documents which, realistically, could have been located anywhere. It is difficult to envision the circumstances where, pursuant to a properly issued warrant, a search for various papers would be so extensive as to exceed the scope of the warrant. Certainly, on the facts that the Plaintiff presents, Investigator Viar's search was not unreasonable. I conclude, therefore, that summary judgment is proper for the Defendant, Investigator Viar.

E. Conversion

The Plaintiff urges me to rule on his pendent claim of common law conversion of WLVA property. In *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Because I have granted the Defendants summary judgment on the Plaintiff's federal claims, I decline to exercise jurisdiction over the Plaintiff's pendent claim.

ORDER

In accordance with the Memorandum Opinion filed contemporaneously herewith, it is hereby ADJUDGED and ORDERED that:

1. Defendants' motion for summary judgment of Plaintiff's claim under 42 U.S.C. § 1983 is GRANTED.

2. Defendants' conversion claim is DISMISSED without prejudice.

The clerk is directed to send a certified copy of this Order to all counsel of record.

ENTER this 3rd day of October, 1988.