**Robert PACHALY, Jr.,**
**Plaintiff–Appellant,**

v.

**CITY OF LYNCHBURG; R.D. Viar;**
**William G. Petty,**
**Defendants–Appellees,**

**and**

**Commonwealth of Virginia, Defendant.**

**No. 88–3193.**

United States Court of Appeals,
Fourth Circuit.

Argued April 13, 1989.

Decided March 2, 1990.

William Fain Rutherford, Jr. (John L. Walker, Jr., Elizabeth K. Dillon, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief), Walter Clyde Erwin, III (William M. Phillips, Lynchburg, Va., City Attorney's Office, A. David Hawkins, Overbey, Overbey & Hawkins, Rustburg, Va., on brief), for defendants-appellees.

Before RUSSELL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The appellant, Robert Pachaly, Jr., filed this action pursuant to the provisions of 42 U.S.C. § 1983 against the City of Lynchburg, Virginia, Commonwealth's Attorney for the City of Lynchburg William G. Petty, R.D. Viar, a Lynchburg police officer, and the Commonwealth of Virginia.[1] The complaint alleged that the named defendants converted property and violated appellant's civil rights during a search of his radio station. Following discovery, the defendants filed motions to dismiss. The district court, pursuant to the provisions of Fed.R.Civ.P. 12(c), treated the motions as a motion for summary judgment, as matters outside the pleadings were considered. 696 F.Supp. 180.

Summary judgment in favor of the City of Lynchburg was granted because the district court found that the appellant had failed to present any evidence of a municipal policy adopted in violation of Section 1983. The court found that Petty was immune from liability and that there was insufficient evidence to sustain the cause against Viar.[2] Pachaly now appeals from the grant of summary judgment. We affirm.

Clifford Lee Harrison (Stone & Hamrick, P.C., Radford, Va., on brief), for plaintiff-appellant.

I.

The essential facts pertinent to this appeal are as follows: The appellant was the sole owner of radio station WLVA in

1. The cause as to the Commonwealth was voluntarily dismissed by Pachaly. Fed.R.Civ.P. 41.

2. Because the federal cause was dismissed against all defendants, pendent state claims were also dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Lynchburg. In March of 1986 the appellant was indicted on two counts of larceny from the Commonwealth of Virginia, one count of larceny from an individual, and one count of assault with a motor vehicle. Thereafter, a warrant was issued for the appellant's arrest and a Lynchburg magistrate issued a warrant authorizing a search for relevant books, records, and receipts contained in the offices of WLVA. The warrant was executed by various law enforcement officials including R.D. Viar and William Petty. At that time, the appellant was arrested, and approximately ten boxes of WLVA documents were taken. Although the officers conducting the search attempted to limit their search to those items authorized in the search warrant, a small envelope containing jewelry belonging to the appellant was also seized. This envelope was located inside a file containing WLVA business records and was subsequently returned to the appellant without incident.

Prior to his criminal trial, counsel for the appellant moved to suppress and to return all items seized at WLVA. Counsel contended that the search exceeded the scope of the warrant and was nothing more than a mere "fishing expedition" for evidence relating to crimes not contemplated when the warrant issued. After the matter was briefed and argued, the court found the search to be reasonable and denied the motion to suppress.

In August of 1987, the appellant was tried and acquitted on the charge of larceny from the Commonwealth of Virginia. In December of the same year, the charge against the appellant of larceny from an individual was *nol prossed*, but the appellant was convicted of assault with a motor vehicle.

The appellant filed this action pursuant to the provisions of 42 U.S.C. § 1983 in February of 1988 alleging that the search of WLVA was unreasonable and excessive and that the defendants converted WLVA property in violation of his constitutional rights.

## II.

Because this was a decision based solely on the pleadings and supporting materials, our review of the record before us is *de novo*, and we are constrained by the standard employed by the district court. Fed. R.Civ.P. 56(c). *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). In moving for a grant of summary judgment, the defendants bear the burden of showing that no genuine issue of material fact exists and that each is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *De Leon v. St. Joseph Hospital, Inc.*, 871 F.2d 1229, 1233 (4th Cir.1989).[3] Such a burden may be met by use of "affidavits, exhibits, depositions, and other discovery materials." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). By way of affidavit, the defendants have raised the defense of immunity.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). This obligation is particularly strong when the non-moving party bears the burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

## III.

■ We first address the propriety of summary judgment in favor of the City of Lynchburg. To establish municipal liability under Section 1983, the plaintiff must be able to show that a deprivation of his con-

---

**3.** As the appellant is the party defending against these actions for summary judgment, he is entitled to have the evidence of record and all reasonable inferences read in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970).

stitutional rights results from the execution of a municipal policy or custom. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Hughes v. Halifax County School Bd.,* 855 F.2d 183 (4th Cir. 1988). Liability may not be based on a theory of *respondeat superior. Id.*

■ The appellant contends, and we agree, that a single act by a municipality may give rise to civil liability if it is shown that the officials of the municipality responsible for establishing the challenged policy made a calculated choice to follow the course of action deemed unconstitutional. *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). According to the appellant, the search of the WLVA premises is evidence that the City of Lynchburg adhered to a policy condoning illegal searches and seizures. Such a position is untenable. There is no evidence that the city pursued an impermissible policy of issuing and executing illegal search warrants or routinely conducted searches beyond the authorization of the single warrant herein. As we have noted, in order to survive a properly supported adverse motion for summary judgment, Rule 56 requires that a party must submit, via affidavit, specific facts showing that there is a genuine issue for trial. The appellant did in fact provide the district court with an affidavit. However, this affidavit was merely a brief annotated recounting of the events during and preceding the search of the WLVA offices. It contained nothing more than unsupported allegations about the actions of the Lynchburg officials. Mere allegation and innuendo are not enough to defeat the city's well supported motion for summary judgment. Because the appellant was unable to bring forward even one piece of colorable evidence to support his contention that the city acted in violation of his constitutional rights, dismissal of the action against the City was warranted.

## IV.

The warrant issued by the Lynchburg magistrate in this case authorized a search for books, business records and receipts at the offices of WLVA. The appellant alleges that when executing the search, Officer Viar exceeded the scope of the warrant in violation of his constitutional rights. Specifically, the appellant contends that by employing a SWAT team, searching furniture, and looking behind wall coverings, Viar and his deputies conducted an excessive and illegal search. We find such an argument to be unpersuasive.

■ A government official performing a discretionary function does so clothed with qualified immunity shielding him from civil liability as long as his actions do not violate clearly established tenets of constitutional law. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (officials are immune unless "the law clearly proscribed the actions" they took). Whether an officer is entitled to immunity, qualified or absolute, is a question of law for determination ordinarily by the trial judge. In reviewing the trial judge's determination of that issue we look to that provision of the Constitution from which the right alleged to have been abridged is derived—in this case, the Fourth Amendment. *Anderson v. Creighton,* 107 S.Ct. at 3038.

■ Armed with a valid search warrant, Viar conducted a thorough search of the WLVA premises for business-related documents. As the district court observed, such documents could realistically be found anywhere. The scope of the warrant was broad and, accordingly, so was the search. Appellant does not now challenge the validity of the issued search warrant—only the manner in which it was executed. We believe and the district judge ruled that given the extent of the warrant's authority to search, Viar's search fell within the bounds of its authority and therefore there was no violation of a "clearly established" Fourth Amendment right. The result of that conclusion is that Viar was clothed with qualified immunity when searching the WLVA

premises, and the district judge was correct in ruling that any civil claim made against him in his official capacity was properly disposed of upon motion for summary judgment.[4]

## V.

Finally, we turn to the propriety of a grant of summary judgment in favor of Commonwealth's Attorney Petty, prosecutor for the City of Lynchburg. The appellant argues that the actions of Petty were investigatory and police-related in nature and not within the scope of his duties as an attorney representing the City of Lynchburg, thus stripping him of absolute immunity from civil liability. The appellant reasons that by participating in a post-indictment search of the WLVA offices, Petty engaged in an activity that was not prosecutorial in nature and was nothing more than a foray seeking narcotics or other evidence of further criminal activity on the premises. Petty counters by asserting that his participation in the search was for the legitimate purpose of obtaining evidence to prosecute the indictment. We find no evidence of record to suggest to the contrary.

■ A prosecutor, acting within the scope of his duties in initiating and pursuing a criminal prosecution, is absolutely immune from a civil suit for damages under 42 U.S.C. § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995,
47 L.Ed.2d 128 (1976). Preparation for the initiation of a criminal prosecution and for a trial often require the obtaining, reviewing and evaluation of evidence, making the distinction between necessary and excessive investigation an extremely clouded one. If, however, it is determined that the activities of a prosecutor are purely investigative and police related in nature and beyond the scope of his prosecutorial duties, the protection of absolute immunity from civil liability is lost. *McCray v. Maryland,* 456 F.2d 1, 3–4 (4th Cir.1972); *Joseph v. Patterson,* 795 F.2d 549 (6th Cir.1986).

■ As an appellate court, we will apply a functional test when determining whether the actions of a prosecutor are so intimately and inexorably tied to the prosecutorial phase of the criminal process as to warrant the blanket protection that absolute immunity affords. *Imbler v. Pachtman,* 424 U.S. at 430, 96 S.Ct. at 994–95; *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In conducting such an inquiry, we must balance the right of a citizen to have avenues of redress for constitutional wrongs with the need to assure that a prosecutor vigorously and zealously pursue just prosecution without fear of vexatious litigation, causing deflection of a prosecutor's energies from his public duties. *Imbler,* 424 U.S. at 423, 96 S.Ct. at 991. *See also Haynesworth v. Miller,* 820 F.2d 1245, 1267–68 (D.C.Cir. 1987).[5]

---

4. In *Mitchell v. Forsyth* the Court said:

Similarly, it follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.... An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established

law, whether the law clearly proscribed the actions the defendant claims he took.
472 U.S. at 527–28, 105 S.Ct. at 2816 (citation omitted).

We further note that, during the pendency of the appellant's state criminal proceeding, a challenge was made to the scope of the search undertaken at the offices of WLVA. This matter was considered by the court and, following a hearing, was dismissed as the court found the search to be reasonable. Accordingly, the appellant was afforded the opportunity for full and fair consideration of his search and seizure claim. *Stone v. Powell,* 428 U.S. 465, 485–86, 96 S.Ct. 3037, 3048–49, 49 L.Ed.2d 1067 (1976).

5. We are also aware, when ruling on such a matter, that at law there are sufficient alternative safeguards to defuse the threat of prosecutorial misconduct, such as the remedial power of the trial judge, appellate and collateral review. *Id.*

■ We find no support for the proposition that participation in an authorized search automatically strips a prosecutor of his privilege of civil immunity. There must be evidence that such participation fell squarely beyond the bounds of the public duty to prepare a complete prosecution. We find no such evidence here and we agree with the findings and conclusions of the district judge to this effect.

## VI.

For the reasons here set forth, the judgment of the district court is

AFFIRMED.

BUTZNER, Senior Circuit Judge, dissenting and concurring:

The warrant authorized a search of Pachaly's business premises and seizure of his books, records, and receipts relevant to a dispute with the Virginia Department of Taxation over withholding taxes and a dispute with an individual about the sale of the business, a radio station. Investigator R.D. Viar, Commonwealth's Attorney William G. Petty, and ten officers conducted the search. According to Pachaly's affidavit, the searchers pulled drawers out of desks and dumped the contents on the floor, areas of carpeting were pulled up, insulation had been pulled from the ceiling and around the edges of the walls, ceiling tiles were missing, a leather briefcase was ripped open, some of the chairs had upholstery cut and stuffing removed, and the bathroom was ransacked. Pachaly also averred that the officers seized jewelry, equipment, personal correspondence, the station license, and his "horse records" including registrations.

Viar claims that the jewelry was seized inadvertently and that the search was conducted in accordance with accepted police practices. The Commonwealth's Attorney claims that he was present in his capacity as a prosecutor to make decisions concerning the need to seize certain documents.

The tax case, which was the ostensible reason for the search, turned out to be a garden variety civil dispute. When it came to trial, the Virginia circuit court acquitted Pachaly at the conclusion of the Commonwealth's evidence. The record does not disclose what became of the dispute about the sale of the station.

Pachaly also avers that before the search he was harassed by the police who unsuccessfully tried to find some offense on which they could arrest him. In his affidavit opposing summary judgment, he claims that the search was conducted to find evidence about other crimes, the Tylenol murders. He states that in Connecticut where he has other business interests, he has had difficulty with a man named Cunningham who charges that Pachaly is the Tylenol murderer. Pachaly has sued Cunningham for libel and slander, and Cunningham has defended on the ground of truth. This suit apparently is pending. Pachaly alleges that Viar has admitted conferring with Cunningham.

The Fourth Amendment provides in part:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....

Unless shielded by qualified immunity, officers who conduct unreasonable searches and seizures subject themselves to liability for the harm they cause to persons whose rights they have violated. See Anderson v. Creighton, 483 U.S. 635, 638–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987); Galluccio v. Holmes, 724 F.2d 301, 304 (2d Cir.1983). Whether a police officer is protected by qualified immunity "generally turns on the 'objective legal reasonableness' of the action" the officer has taken. Anderson, 483 U.S. at 639, 107 S.Ct. at 3039 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

Anderson explains that to deny the police qualified immunity, the evidence must show that "in the light of pre-existing law the unlawfulness must be apparent." 483 U.S. at 640, 107 S.Ct. at 3039. It is beyond dispute that a reasonable police officer should know that pre-existing constitutional law dictates that a search and seizure should not exceed the scope of the warrant.

The Fourth Amendment proscribes such unreasonable searches.

I am unable to accept Viar's argument that as a matter of law his actions did not exceed the scope of the warrant. From the description of the search painted by Pachaly and the reasonable inferences that may be drawn from this description, a jury weighing the conflicting evidence might find that pulling insulation from walls and ceiling, cutting upholstery on chairs and removing the stuffing, ripping open a briefcase, dumping desk drawers, removing personal correspondence, records, and other personal property exceeded the authority conferred by the warrant.

The Commonwealth's Attorney's plea of absolute immunity presents a more difficult case. If in fact he was engaged in a postindictment search for records pertaining to the tax prosecution, he is entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). But if he had departed from his role as a prosecutor and was engaged in the investigation of other crimes for which no indictments had been returned, he was not entitled to absolute immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 520–24, 105 S.Ct. 2806, 2812–14, 86 L.Ed.2d 411 (1985); *Joseph v. Patterson*, 795 F.2d 549, 553–59 (6th Cir.1986). Again, a jury could reasonably find from conflicting evidence and inferences reasonably drawn from the evidence that the search far exceeded the scope of the warrant and sought evidence of crimes other than those charged in the pending indictments.

I dissent from the court's affirmance of the summary judgment granted in favor of Viar and the Commonwealth's Attorney. I concur in affirming summary judgment for the city of Lynchburg.