**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GENE ELWOOD MOORE,
Petitioner-Appellant,

v.                                                          No. 99-6732

ED BROWN, Sheriff,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CA-99-202-5-F)

Argued: April 7, 2000

Decided: May 30, 2000

Before LUTTIG, Circuit Judge, Roger J. MINER,
Senior Circuit Judge of the United States Court of Appeals
for the Second Circuit, sitting by designation,
and Patrick M. DUFFY, United States District Judge
for the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jeffrey Stephen Miller, Jacksonville, North Carolina, for
Appellant. Clarence Joe DelForge, III, Assistant Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney

General, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gene Elwood Moore petitions this court to review the lower court's
grant of summary judgment to Sheriff Ed Brown, and denial of
Moore's petition for habeas corpus.

I. BACKGROUND

Mr. Moore (hereinafter "Moore") owns real estate located in Jack-
sonville, Onslow County, North Carolina, upon which he operates
three businesses, "Video Star," "Baby Dolls," and "Private Pleasures,"
alleged to be in violation of Onslow County's Ordinance entitled "Or-
dinance to Regulate Adult Businesses and Sexually Oriented Busi-
nesses in Onslow County, NC." The Ordinance, adopted on
September 21, 1992, provides that "adult businesses"[1] and "sexually
oriented businesses"[2] shall not be permitted in any building located

_____

[1] An "adult business," as defined by the Ordinance, is "any business
activity, club or other establishment which permits its employees, mem-
bers, patrons or quest [sic] on its premises to exhibit any specified ana-
tomical areas before any other person or persons." J.A. at 27. The
Ordinance defines specified anatomical areas "as less than completely
and opaquely covered human genitals, pubic regions, buttocks and
female breasts below a point immediately above the top of the areola."
J.A. at 28.
[2] The Ordinance defines a "sexually oriented business" as

> any business activity, club or other establishment, within which
> the exhibition, showing, rental, or sale of materials distinguished

2

within 1,000 feet in any direction from a dwelling or residence, house of worship, public school or playground, or other adult or sexually oriented business.[3] A resolution adopted by the Board of County Commissioners reflects the purpose of the Ordinance:

> [A]fter comprehensive study of potential deleterious secondary effects of certain types of sexually oriented adult businesses, the Board of Commissioners of Onslow County

_____

> or characterized by an emphasis on material depicting, describing, or exhibiting specified anatomical areas or relating to specified sexual activities is permitted. Regulated businesses shall include, but are not limited to: adult arcades, adult bookstores, adult motion picture theaters, adult theaters, massage parlors, and/or adult video rental/sale stores . . . .

J.A. at 30. "Specified sexual activities" are defined as "[h]uman genitals in a state of sexual stimulation or arousal; . . .[a]cts of human masturbation, sexual intercourse, sodomy; or . . . [f]ondling or other erotic touchings of human genitals, pubic regions, buttocks or female breasts." Id. at 28.

[3] The portion of the Ordinance regulating adult and sexually oriented businesses is as follows:

> (ii) No adult business [or sexually oriented business] shall be permitted in any building:
>
> (a) located within 1000 feet in any direction from a building used as a residence or dwelling.
>
> (b) located within 1000 feet in any direction from a building in which an adult business or a sexually oriented business is located.
>
> (c) located within 1000 feet in any direction from a building used as a church, synagogue, or other house of worship.
>
> (d) located within 1000 feet in any direction from a building used as a public school or as a state licensed day care center.
>
> (e) located within 1000 feet in any direction from any lot or parcel on which a public playground, public swimming pool, or public park is located.

J.A. at 29-30.

finds that it is appropriate and necessary to prevent those deleterious secondary effects which can reasonably be expected to result from the inappropriate location or concentration of such businesses. . . .

Maynor v. Onslow County, 488 S.E.2d 289, 290 (N.C. Ct. App. 1997) (citing Onslow County Code). The resolution also provides that "it is not the intent of the Board of Commissioners of Onslow County . . . to deny reasonable access to the distributors and exhibitors of sexually oriented entertainment to their intended market. . . ." Id. (citing Onslow County Code).

On December 5, 1995, Onslow County filed an action in a North Carolina superior court against Moore, seeking a mandatory and/or prohibitory preliminary and permanent injunction and order of abatement compelling Moore to comply with the provisions of the Ordinance. On January 18, 1996, nunc pro tunc December 15, 1995, the trial court found that Moore was operating a sexually oriented business in violation of the Ordinance, and entered a Preliminary Injunction commanding Moore to bring his property into compliance with, and prohibiting him from violating, the Ordinance. This order was filed with the Onslow County Clerk of Court on March 26, 1996. Moore gave notice of appeal from the entry of the Preliminary Injunction on April 18, 1996, which the North Carolina Court of Appeals, in an unpublished opinion, dismissed as interlocutory on December 3, 1996. On July 3, 1996, the state trial court entered an order finding that Moore willfully failed to comply with the provisions of the Preliminary Injunction, and held him in civil contempt. On May 5, 1998, the North Carolina Court of Appeals reversed the trial court's July 3, 1996 finding of civil contempt, and remanded Moore's case back to the trial court.[4]

_____

[4] The North Carolina Court of Appeals reversed and remanded the trial court's finding of civil contempt because under North Carolina law, a person may not be held in contempt of an order that is not in force, and the trial court had improperly based, in part, its finding of contempt on Moore's conduct prior to the date of the March 26, 1996 Preliminary Injunction Order. Onslow County v. Moore, 499 S.E.2d 780, 788-89 (N.C. Ct. App. 1998).

Onslow County also filed a motion on July 20, 1997 alleging Moore's willful violation of the Preliminary Injunction's terms, and the trial court issued an order on July 29, 1997 requiring Moore to appear and show cause why he should not be held in criminal contempt. At the hearing held on September 1, 1997, the State offered evidence showing that Moore owns the three businesses, which are located fifty to seventy-five feet from a private residence. A deputy sheriff testified that while working in an undercover capacity, he entered Moore's "Video Star" on July 11, 1997, and purchased a sexually explicit video, which Moore stipulated "had an emphasis on specified sexual activities and specified anatomical areas as those terms are defined by . . . the Onslow County Ordinances." State v. Moore, 511 S.E.2d 22, 24 (N.C. Ct. App. 1999). On July 25, 1997, the same undercover officer visited Moore's "Private Pleasures," where he paid fifty dollars to have a nude female employee dance in an erotic manner for thirty minutes. Id. On July 26, 1997, the officer testified that he entered "Baby Dolls," and paid fifty dollars to have a nude female employee perform sexual touching. Id.

After the hearing, the trial court found Moore guilty of criminal contempt for his failure to abide by the Preliminary Injunction's terms. Moore was publicly censured, fined five hundred dollars, and sentenced to thirty days in jail.**5** He appealed to the North Carolina Court of Appeals, which affirmed the trial court's finding of criminal contempt on February 2, 1999. Among other findings, the Court of Appeals found the Ordinance at issue to be constitutional, holding that it did not violate the First Amendment, and was not unconstitutionally vague. State v. Moore, 511 S.E.2d 22, 26 (N.C. Ct. App. 1999). Moore subsequently filed a petition for discretionary review in the Supreme Court of North Carolina, which that court denied on March 3, 1999.

Moore next filed a petition for habeas corpus on March 24, 1999 in the United States District Court for the Eastern District of North Carolina, asserting that the Ordinance is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments, and that the Preliminary Injunction violates his due process rights by fail-

_____

**5** Moore commenced service of his thirty-day sentence on March 26, 1999.

ing to provide him with sufficient notice of the acts that he was restrained from performing. The District Court denied Moore's petition, asserting that the constitutional validity of the Ordinance is "not a matter for [the] court's review," and that the North Carolina Court of Appeals reasonably interpreted and applied relevant due process precedent in determining the Preliminary Injunction to be valid. This appeal followed.

II. ISSUES

Moore has asked this court to review the following two questions:

> (1) Whether the District Court erred in failing to consider the constitutionality of the underlying Ordinance for which Moore was found in criminal contempt of court; and

> (2) Whether the District Court erred in concluding, pursuant to 28 U.S.C. § 2254(d), that the North Carolina courts' adjudications in this matter were reasonable interpretations and applications of relevant due process precedent of the United States Supreme Court.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the scope of federal habeas review of state court decisions is limited. See 28 U.S.C.§ 2254(d) and (e) (1999). The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). We give independent meaning to the "contrary to" and the "unreasonable application" clauses of subsection (1) of section 2254(d). See Green v. French, 143 F.3d 865, 869-70 (4th Cir. 1998); see also Williams v. Taylor, 120 S. Ct. 1495, 1519 (2000) (approving of our "independent" interpretation). According to the Supreme Court's decision in Williams, "A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." Id. at 1519-20. Regarding the "unreasonable application" clause, Williams generally approved of our holding in Green, and stated it as follows: "First, a state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 1520 (citing Green, 143 F.3d at 869-870). The Williams Court emphasized that a federal habeas court engaging in the "unreasonable application" analysis "should ask whether the state court's application of clearly established federal law was objectively unreasonable."[6] In addition, under section 2254(e)(1), the state court's findings of fact are presumed correct on

_____

[6] **Williams**, 120 S. Ct. at 1521. The Williams Court ruled that our holding in Green that a state court decision involves an "unreasonable application of . . . clearly established Federal law" if the state court has applied federal law "in a manner that reasonable jurists would all agree is unreasonable," was erroneous. Id.

7

federal habeas review, and a habeas applicant may only rebut these findings by clear and convincing evidence. 28 U.S.C.§ 2254(e)(1).

This court's review of the District Court's grant of summary judgment is de novo. See Higgins v. E.I. Dupont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). To grant a motion for summary judgment, a court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The "obligation of the non-moving party is `particularly strong . . . when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (alterations omitted) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex, 477 U.S. at 327.

IV. DISCUSSION

A. The Constitutionality of the Ordinance

In declining to review the constitutionality of the Ordinance, the District Court erroneously relied on the Supreme Court's decision in

8

Walker v. City of Birmingham, 388 U.S. 307 (1967). In Walker, the Court upheld as constitutional an Alabama procedural law which prohibited defendants from challenging the validity of the injunction or ordinance underlying their criminal contempt convictions where those defendants had not, prior to violating the injunction, moved the court that issued the injunction to dissolve or modify that injunction. 388 U.S. at 320-21. Here, however, the record demonstrates that the North Carolina courts did not rely on such a procedural rule, as the North Carolina Court of Appeals, in its opinion affirming Moore's criminal contempt conviction, ruled on the constitutionality of the Ordinance even though it does not appear that Moore first moved the trial court to dissolve or modify the injunction. See State v. Moore, 511 S.E.2d 22, 26 (N.C. Ct. App. 1999); J.A. at 203-04. Thus, Walker is inapplicable to this case, and accordingly does not prevent the federal courts from reviewing the Ordinance's constitutionality. Consequently, the District Court should have considered the constitutionality of the Ordinance.

In its February 2, 1999 opinion of State v. Moore, 511 S.E.2d 22 (N.C. Ct. App. 1999), the North Carolina Court of Appeals considered and rejected Moore's contentions that the Ordinance is unconstitutionally vague and overbroad, and violative of his First Amendment right to freedom of expression. The North Carolina Court of Appeals' conclusion that the Ordinance is constitutional is not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Rather, it is entirely consistent with the controlling Supreme Court cases of Young v. American Mini Theaters, Inc., 427 U.S. 50 (1976), and City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986). Both of those opinions upheld almost-identical ordinances under the First Amendment, holding that the respective ordinances were content-neutral time, place, and manner regulations that affected only the location, and not the underlying activities, of adult businesses. See Young, 427 U.S. at 62 (asserting that "[t]he mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances"); City of Renton, 475 U.S. at 54-55. Under City of Renton, the Ordinance is acceptable "so long as [it is] designed to serve a substantial governmental interest and [does] not unreasonably limit alternative avenues of communication." Id. at 47. Here, the Ordinance stated its purpose

9

as the prevention of the harmful secondary effects which often result from the inappropriate location or concentration of sexually oriented and adult businesses, which we find serves the substantial government interest of preserving the County's quality of life. See id. at 50 (finding that the ordinance was designed to combat adult theaters' harmful secondary effects on the surrounding community, and thus served the "substantial government interest" of safeguarding the city's quality of life); Young, 427 U.S. at 62-63 ("The City's interest in planning and regulating the use of property for commercial purposes is clearly adequate to support [a 1,000-foot] restriction applicable to all [adult] theaters within the city limits."). Furthermore, there has been no argument that the Ordinance unreasonably limits alternative avenues of communication. Consequently, the Ordinance clearly does not violate the Constitution under the controlling Supreme Court cases of Young and City of Renton.

Furthermore, Moore has not supplied any clear and convincing evidence that the North Carolina Court of Appeals' finding of the facts was incorrect. Consequently, there is simply no way for Moore to seriously argue that the Ordinance is unconstitutionally vague because he harbored uncertainty as to whether the Ordinance applied to his three businesses.

B. The Constitutionality of the Preliminary Injunction

Moore contends that the Preliminary Injunction issued by the state superior court violates his due process and freedom of expression rights. This claim is entirely meritless. The North Carolina Court of Appeals rejected without discussion this same argument by Moore in Onslow County v. Moore, 499 S.E.2d 780, 789 (N.C. Ct. App. 1998), and another panel of the state appellate court stated that it would not overrule that decision in State v. Moore, 511 S.E.2d 22, 25 (N.C. Ct. App. 1999). We agree with the District Court's conclusion that the North Carolina Court of Appeals reasonably interpreted and applied relevant due process precedent in holding that the trial court's Preliminary Injunction affords Moore due process by setting forth in reasonable detail the acts enjoined.

V. CONCLUSION

We hold that the District Court erroneously assumed that Walker was applicable to this case and prevented it from reviewing the con-

10

stitutionality of the Ordinance. We further hold that the Supreme Court decisions of <u>Young v. American Mini Theatres, Inc.</u>, 427 U.S. 50 (1976), and <u>City of Renton v. Playtime Theatres, Inc.</u>, 475 U.S. 41 (1986), foreclose Moore's First Amendment challenges to the Ordinance and Preliminary Injunction. We also reject as meritless Moore's due process claim that the Preliminary Injunction failed to provide him fair notice of what acts were prohibited. Accordingly, we affirm the District Court's grant of summary judgment to Sheriff Brown, and denial of Moore's petition for habeas corpus.

<u>AFFIRMED</u>

11