**John STANISLAUS, pro se, Plaintiff,**

v.

**Thomas WHITE, Secretary of the Army, Defendant.**

**No. Civ.A. AW–01–637.**

United States District Court, D. Maryland, Southern Division.

March 29, 2002.

John Stanislaus, Laurel, MD, pro se.

Jennifer Lilore Huesman, Assist. U.S. Atty., Baltimore, MD, for Ronald L. Shippee, defendant.

Ariana Wright Arnold, U.S. Attorney's Office, Baltimore, MD, for Thomas E. White, defendant.

### *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Pending before the Court is Plaintiff's Motion for Appointment of Counsel [3–1], Defendant's Motion to Dismiss [9–1], or in the Alternative for Summary Judgment [9–2], Plaintiff's Cross–Motion for partial Summary Judgment [17–1], and Plaintiff's Motion for additional discovery [17–2]. No hearing is deemed necessary. *See* Local Rule 105.6. Upon careful consideration of

the foregoing motions, and oppositions thereto, the Court makes the following determinations.

## I. *FACTUAL BACKGROUND*[1]

Plaintiff, Dr. John Stanislaus, filed this action pursuant to the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq.*, against Defendant in his official capacity as Secretary of the United States Department of the Army. Plaintiff alleges that Defendant unlawfully discriminated against him because of his race, color, sex, national origin and age when Defendant denied him a promotion and subsequently fired him. Plaintiff describes himself as a dark-skinned male of Central Asian race, and Indian national origin. He was born in 1940, and was fifty-eight year old at the time of his discharge.

In 1984, Plaintiff began working for the Department of Defense ("DoD") as a chemist in the Forensic Toxicology Drug Testing Laboratory in Fort Meade, Maryland. Plaintiff continued in that position until 1990, when he received a grade level increase, and received the chemist title of Laboratory Certification Official ("LCO"). Plaintiff was rated "successful" and "highly successful" from 1990 through 1993, and was commended for his knowledge of chain of custody procedures, his problem-solving and troubleshooting skills, and his ability to train other employees. He remained an LCO until Defendant removed him from his position and from federal employment on March 30, 1998.[2]

As a part of a formal training process, Defendant certified plaintiff as a Negative Laboratory Certification Official ("NUCO"). As a NUCO, Plaintiff was certified to examine urine samples of civilian DoD employees and military service members to determine whether illicit drugs or alcohol were being used. Plaintiff could only certify urine specimens with negative results because he was not a Positive Laboratory Certification Official ("PLCO")—a chemist certified to render opinions regarding specimens with negative and positive results. According to the DoD policy, PLCOs required more extensive certification than NUCOs, because positive drug test results could result in criminal and administrative action against the subject tested. In addition, Defendant expects that PLCOs would be able to testify as experts regarding the positive results, if necessary.

Because Plaintiff desired to be a PLCO, he began a series of "rotations" through different parts of the laboratory trying to receive the training and experience necessary to perform the functions of PLCO. When the rotations were complete, and despite being told that he had satisfactorily completed all the PLCO requirements, laboratory personnel would not sign-off on the necessary documents for him to be "certified" as a PLCO. Plaintiff alleges that the failure to sign-off was driven by intentional discrimination.

Plaintiff reasons that similarly situated employees who had completed the same rotations, but who were not of the same gender, race, national origin, and/or age group as he, had their PLCO paperwork properly executed after they finished their rotations. Plaintiff also alleges that Defendant permitted employees of different genders, races, national origins, and age

---

1. The facts are presented in the light most favorable to the Plaintiff. *See* Fed.R.Civ.P. 12(b)(6).

2. Government states that the date is April 13, 1998.

than he to take on the duties and responsibilities of PLCOs, without obtaining all the training. He also alleges Defendant promoted less qualified persons that are not the same ethnic, gender, or age classifications as he, to higher level positions. Further, he asserts that he did not have an equal opportunity to apply for these position because they were not announced to him.

In 1995, Plaintiff complained to his direct supervisor, Dr. James W. Jones ("Dr. Jones"), Chief of Quality Assurance, regarding his completed training and failure to obtain the PLCO classification. Dr. Jones recommended that Plaintiff make a written request to receive PLCO certification. Plaintiff did so in a memorandum dated March 30, 1995. Thereafter, Plaintiff received his Senior System Civilian Evaluation Report Support Form ("evaluation report"), in which Defendant designated obtaining PLCO certification as a mandatory and major performance objective. Defendant conditioned Plaintiff's continued employment upon his receipt of the PLCO certification. Asserting that he had already completed his training, Plaintiff suggested that his supervisors assign him to a PLCO position. His supervisors refused to do so, citing that he lacked the necessary signatures to executed certain forms. Dr. Jones established a schedule for Plaintiff to complete the rotations again.

Plaintiff again completed the rotation for the processing section, including the key substantive requirements for the rotation in the confirmation section. He reported his progress to Dr. Jones. He also discussed with Dr. Jones the futility of having to go through the rotations again, given that he had done them before, and was fully conversant in the procedures, which had not significantly changed since 1991. He probed directly about whether Defendant or its representatives were requiring

him to repeat this process because of a discriminatory motive.

Dr. Jones then notified Plaintiff and others who were to be training him in the remaining rotations that training for Plaintiff as a PLCO was to cease immediately. Plaintiff then confronted Dr. Jones about why he had cancelled the rotations. Dr. Jones responded by telling him that he could not become certified as a PLCO unless he obtained a signed document in his file showing that he had completed the certification requirements. When Plaintiff repeated that he just completed some training, Dr. Jones ignored him.

Plaintiff alleges that:

[T]the message communicated to [him] from this meeting could not have been more clear: no matter how many times he completed the rotations, nobody in authority would ever sign a document acknowledging that he had done so. Dr. Jones, or possibly others, fully intended to prevent [him] from ever being certified as a positive LCO no matter what he did.

Defendant fired Plaintiff on March 30, 1998. Defendant reasoned that it terminated Plaintiff because Plaintiff refused to complete the necessary training.

On March 2, 2001, Plaintiff filed his Complaint in this Court. Defendant moves to dismiss the Complaint, or in the alternative for summary judgment, arguing that Plaintiff has failed to state a claim, failed to exhaust administrative remedies, and that no genuine issues of fact exist. Plaintiff disagrees and moves for partial summary judgment on the issue of exhaustion of administrative remedies. Finding that Plaintiff has stated a claim, the Court DENIES Defendant's Motion.

## II. *DISCUSSION*

### A. *Motion to Dismiss*

Under Fed.R.Civ.Proc. 12(b)(6), a court should not dismiss a complaint "unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint, and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). As the Fourth Circuit has recently stated,

> [A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

 To establish a *prima facie* case of discrimination under Title VII and ADEA, a plaintiff must present evidence sufficient to prove four elements: (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227–28 (4th Cir.1998) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, (1973)). The Supreme Court in *McDonnell Douglas*, also established the "rebuttable presumption" method of proof. That standard, as more recently described by the Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), provides that once the defendant offers a legitimate nondiscriminatory reason, the plaintiff is "afforded the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* 142, 120 S.Ct. at 2106. (Citations omitted).

 This requirement is not meant to be applied in a "rigid, mechanized or ritualistic manner." *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (*citing Furnco. Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). Instead, its purpose is to weed out the most basic nondiscriminatory reasons for adverse employment actions, fine-tune the presentation of proof and "sharpen the focus on the ultimate question—whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir.1995). Further, an employment discrimination complaint need not contain specific facts establishing a *prima facie* case under the *McDonnell Douglas* framework. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Instead, because the *McDonnell Douglas* standard is an evidentiary standard and not a pleading standard, Fed.Rule Civ.Proc. 8(a)(2) only requires Plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See id.* at 997.

### 1. Motion to Dismiss for Failure to Exhaust Administrative Remedies

 Before bringing a Title VII or ADEA claim in federal court, a plaintiff must first exhaust his administrative remedies. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 239 (4th Cir.1999); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995) ("Where ... claims raised under Title VII exceed the scope of the EEOC charge and any charges that would natu-

rally have arisen from an investigation thereof, they are procedurally barred."). Defendant argues that the Court should dismiss Plaintiff's "failure to promote" charge because Plaintiff did not raise it before the EEOC. The Court disagrees.

The Court believes Plaintiff has fulfilled the requirements of 29 C.F.R. § 1614.105, the regulatory requirements that must be met before a Title VII or ADEA suit is brought. Plaintiff reported his compliant to the EEOC and received a Right–To–Sue Letter. Plaintiff's Right–To–Sue Letter states that Plaintiff alleged discrimination in the following areas:

> termination, training, awards, demotion suspension, disciplinary action, harassment (Non-sexual) reassignment request denied, reinstatement, terms/condition employment, assignment duties, duty hours, evaluation/appraisal, **promotion/non selection,** and reassignment-direct.

(Emphasis added). *Stanislaus*, Notice of Right to File Discrimination Complaint, August 20, 1998. The Court finds that Plaintiff's complaints regarding a refusal to certify Plaintiff for discriminatory reasons was sufficient to put the EEOC on notice that the alleged discrimination prevented Plaintiff from obtaining a promotion. *See President v. Vance*, 627 F.2d 353, 362 (noting that Congress did not intend to make the administrative process a procedural roadblock for *pro se* litigants). However, the Court limits Plaintiff claims to those that can be fairly construed as timely and within the scope of the claim filed with the EEOC. *See Dennis, supra*, 55 F.3d at 156.[3] Thus, the Court denies Defendant's Motion to dismiss concerning failure to exhaust administrative remedies.

## 2. *Motion to Dismiss for Failure to State a Claim*

■ Defendant argues that Plaintiff has failed to state a claim for discrimination. Defendant asserts that, because Plaintiff refused to participate in necessary, available training, Plaintiff cannot show that he was qualified for his position, or that he met the legitimate expectations of his employer. In sum, Defendant contends that Plaintiff cannot establish a *prima facie* case of discrimination. The Court disagrees.

Plaintiff's Complaint provides that he is a member in a protected group, and that he is qualified for the job, namely that he did complete all training, but for discriminatory reasons, Defendant would not acknowledge his training. In other words, Plaintiff argues that Defendant's alleged legitimate reason for the termination and failure to promote is a pretext to intentional discrimination. Plaintiff also alleges that Defendant failed to promote him and fired him, and that the circumstances of his termination and lack of promotion support an inference of discrimination, namely that Defendant gave other similarly or less qualified persons outside Plaintiff's protected class opportunities, promotions and allowed them to keep their jobs. Accepting all well-pleaded allegations in Plaintiff's Complaint as true, and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff satisfies Fed.Rule Civ.Proc. 8(a)(2) with regard to the requirements of a complaint. Thus, the Court DENIES Defendant's Motion to Dismiss.

### B. *Summary Judgment*

Defendant attaches supporting materials to its motion and, alternatively, moves for

---

**3.** Defendant properly contends that Plaintiff's assertion that he was denied a promotion in September 1993, or other dates outside of the scope of the EEOC Complaint, cannot fairly be considered part of the present Compliant.

summary judgment. If materials outside the pleadings are presented and considered, the Court should treat a motion to dismiss as one for summary judgment. *See* Fed.R.Civ.P. 12(b); *see also Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 995–96 (4th Cir.1997). In reviewing a motion for summary judgment, the court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that the entry of summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994); *see LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir.1998).

The absence of any admissible evidence establishing the fact of discrimination is sufficient to shift the burden of production to the Plaintiff. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A *Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure* § 2729.1 (3d.1998). Once the burden has shifted, the evidentiary standard under Rule 56 rises to require the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. Fed.R.Civ.P. 56(c), (56)(e). This burden is "particularly strong" where the nonmoving party also bears the burden of proof at trial. *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Moreover, summary judgment may only be entered after "adequate time for discovery." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Temkin v. Frederick County Com'rs*, 945 F.2d 716, 719 (4th Cir.1991).

Under the circumstances of this case, the Court finds summary judgment inappropriate. As seen above, Plaintiff has stated a claim for discrimination. Yet the Court has not issued a scheduling order and the parties have not had an opportunity for formal discovery. Moreover, Plaintiff has given the Court an affidavit outlining his legitimate need for discovery pursuant to Fed.R.Civ.P. 56(f). Therefore, the Court finds it appropriate to deny Defendant's Motion for Summary Judgment and allow time for discovery.

### C. *Appointment of Counsel*

Finally, Plaintiff moves for Appointment of Counsel. Because this case lacks complex discovery issues, the Court will also DENY Plaintiff's motion. Plaintiff may file its request again when the facts of this case are more clearly developed.

### *CONCLUSION*

For the reasons stated above, the Court will DENY without prejudice Plaintiff's Motion for Appointment of Counsel [3–1], DENY Defendant's Motion to Dismiss [9–1] or in the Alternative for Summary Judgment [9–2], DENY Plaintiff's Cross-Motion for partial Summary Judgment [17–1], and GRANT Plaintiff's Motion for additional discovery [17–2]. An Order consistent with this Opinion will follow.