**Dennis HAMMER, as personal representative of the estate of Diane Hammer, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant.**

**C.A. No.: 9:05–2663.**

United States District Court, D. South Carolina, Beaufort Division.

Sept. 21, 2006.

VM Manning Smith, Manning Smith Law Office, Beaufort, SC, for Plaintiff.

Amy Yager Jenkins, Stephanie E. Lewis, Nelson Mullins Riley and Scarborough, Charleston, SC, Clarence Davis, Melissa J. Copeland, Nelson Mullins Riley and Scarborough, Columbia, SC, for Defendant.

## ORDER

DUFFY, District Judge.

Plaintiff Dennis Hammer ("Plaintiff"), as the beneficiary under his wife's employer-sponsored benefit plan, brings a claim pursuant to the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA"), § 502(a) (29 U.S.C. § 1132(a)), to recover accidental death and personal loss benefits following his wife's death. This matter is currently before the court on Defendant Aetna Life Insurance Company's ("Aetna") Motion for Summary Judgment.

## BACKGROUND

The facts, either uncontested or considered in the light most favorable to Plaintiff, are as follows:

Diane Hammer, now deceased, was an employee of Comcast Corporation. Through her employment, she was insured under an employer-sponsored Group Life and Accident Health Insurance Policy funded by Aetna (the "Policy"). The Policy provided Mrs. Hammer with coverage for both basic life insurance and also accidental death and personal loss. As set forth by the Policy, the requirements for payment of accidental death and personal loss benefits differed from the requirements for payment of basic life insurance benefits. Among other things, the Policy provides coverage for accidental death and personal loss benefits only in instances of "losses caused by accidents." (Policy at 10.) No benefits are payable under the Policy for losses caused or contributed to by "suicide or attempted suicide ... [a]n intentional self-inflicted injury ... [or u]se of alcohol, intoxicants, or drugs, except as prescribed by a physician." (Policy at 10–11.)

On November 18, 2004, Diane Hammer was found dead in the bathroom of her home. A complete autopsy was performed. The Forensic Pathology Report dated November 19, 2004, indicated that Mrs. Hammer had the following drug levels in her system at the time of her death: "Fluoxetine = 1200 ng/mL (high/toxic level), norfluoxetine (active fluoxetine metabolite) = 1200 ng/mL (high/toxic level), atomoxetine = 1000 ng/mL (high/therapeutic level) and methorphan = 20 ng/mL (low level)."

The court takes judicial notice of the following facts, all of which are supported by the Physician's Desk Reference for Prescription Drugs: Fluoxetine is sold under various trade names, including Prozac, and is used to treat depression and is available only by prescription. Norfluoxetine is an active metabolite of fluoxetine and is formed in the liver as the body metabolizes fluoxetine. Atomoxetine is sold under the trade name Strattera, is available only by prescription, and is used to treat Attention Deficit Hyperactivity Disorder ("ADHD").

Plaintiff, Mrs. Hammer's widower, is serving as the personal representative of her estate. After her death, he filed a claim with Aetna for basic life insurance benefits, as well as a claim for accidental death and personal loss benefits under the Policy. Plaintiff received the basic life insurance benefits under the Policy in t he amount of $33,000.00. Aetna, however, denied the claim for an additional $33,000.00

in accidental death and personal loss benefits under the Policy.

In the initial denial letter dated February 3, 2005, Aetna explained to Plaintiff that the Policy precluded payment of accidental death and personal loss benefits where the death was not accidental and instead resulted from an intentional self-inflicted injury or from the use of alcohol, intoxicants, or drugs, except as provided by a physician. Aetna, relying on information it had received about Mrs. Hammer's cause of death, including information contained in the death certificate, the proof of death form, and the Forensic Pathology Report, noted that Mrs. Hammer's blood contained high/toxic levels of fluoxetine and norfluoxetine and high levels of atomoxetine, and that the medical examiner concluded that her primary cause of death was cardiac arrest and "acute fluoxetine/norfluoxetine toxicity" caused by "self-administration of drugs." Aetna therefore denied Plaintiff's claim for accidental death and personal loss benefits. The denial of benefits letter provided for a right to appeal and indicated that Aetna would review any additional evidence that Plaintiff submitted in support of the claim. The letter also explained that if the denial was ultimately upheld, Plaintiff has the right to file an ERISA civil action for benefits.

On February 8, 2005, Plaintiff's counsel wrote to Aetna and challenged the denial of the disputed benefits. He threatened a lawsuit but did not enclose any evidence supporting his client's position.

Aetna responded by letter dated February 28, 2005, in which it stated that all information before it indicated that Mrs. Hammer died of an acute fluoxetine/norfuoxetine toxicity and that there was no official record that she had ever been lawfully prescribed those drugs. Accordingly, the Policy exclusion relating to losses caused by taking drugs "except as prescribed by a physician" applied in this case. Aetna further stated that it still had "not received any information proving that these benefits are payable" and that it had "not received any evidence or reason to indicate that [the benefits denial] should be overturned." Accordingly, Aetna found that the claim for disputed benefits had been given a full and fair review and that the denial of such benefits was now final.

On March 14, 2005, Plaintiff's counsel sent to Aetna copies of three photographs of the labels from Mrs. Hammer's prescription for Prozac and Strattera. These bottles showed that Mrs. Hammer had been prescribed (1) 20 mg capsules of Prozac, to be taken one at a time, twice a day, and (2) 40 mg capsules of Strattera, to be taken one capsule per day for one week and then one capsule twice daily thereafter. No other evidence was enclosed with the letter.

On April 18, 2005, Aetna responded with another letter explaining that the case had been reopened and that an Aetna Medical Director had examined the evidence regarding Mrs. Hammer's prescriptions. The Medical Director found that the evidence showed that Mrs. Hammer had taken her medications in excess of what was prescribed by her physician. Aetna explained that according to Winek's Drug & Chemical Blood–Level Data 2001, fluoxetine has a therapeutic range of 9–400 ng/mL and a lethal range of 1300 to 6800 ng/mL. Aetna also explained that according to the International Programme on Chemical Safety Poisons and Information Monograph 651, the kinetics of fluoxetine are such that "peak levels for 30 mg, 60 mg and 75 mg doses were 30.1 ng/mL, 93.0 ng/mL and 134.6 ng/mL respectively (Saletu & Grunberger, 1985)." Aetna found that this data suggests that Mrs. Hammer took much more than the 20 mg of fluoxetine prescribed to her on the morning of her death, and therefore the limitation for

losses caused or contributed to by the use of drugs applies. Accordingly, Aetna upheld the denial of the disputed benefits. The April 18, 2005 letter also emphasized that the Policy was governed by ERISA, the denial had been given a full and fair review, and the denial decision was now final.

Thereafter, Plaintiff's counsel filed a state court breach of contract action seeking benefits under the Policy. Aetna removed the case to this court. By Order dated December 7, 2005, the court held that "Plaintiff's state law breach of contract claim is preempted by ERISA ... [and] has been converted into a federal claim under ERISA's civil enforcement provision, § 502(a)." Section 502(a) provides that a beneficiary under an ERISA-sponsored plan may bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

## DISCUSSION

### A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991).

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

### B. Law and Analysis of ERISA Claim

#### 1. Standard of Review

■■■ Mrs. Hammer's life insurance plan was part of an employee benefit plan and subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, so the court must look to ERISA law to select the proper standard for review. "[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan grants the administrator sufficient discretionary authority, then the abuse of discretion standard applies and the denial will not be reversed "if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal–Mart Stores, Inc. Assoc. Health and*

*Welfare Plan,* 201 F.3d 335, 340 (4th Cir. 2000). This means that so long as the denial of benefits is the result of "a deliberate, principled reasoning process and ... is supported by substantial evidence," the court will uphold it. *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997). The court's scope of review is limited to the evidence that was before the administrator or fiduciary when it made its benefits decision. *Stup v. UNUM Life Ins. Co. of America,* 390 F.3d 301 (4th Cir.2004).

In the instant case, there is really no question that Aetna possessed discretionary authority to determine Plaintiff's entitlement to benefits. The parties do not dispute this and the Policy's language is clear.[1] As such, the court reviews Aetna's decision to deny benefits for an abuse of discretion, asking whether the denial of benefits was reasonable based on the facts known to Aetna at the time.

■ Plaintiff urges the court to apply a heightened level of scrutiny to the denial because Aetna is the plan administrator, and its decision to deny benefits was therefore made under a conflict of interest.[2] Although the court can not deviate from the abuse of discretion standard, the court may modify that abuse of discretion standard according to a sliding scale, depending upon the level of potential conflict of interest between the administrator and the beneficiary. *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 233 (4th Cir.1997). As the Fourth Circuit has explained: "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan term, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.* This "sliding scale" approach is appropriate in reviewing denials of benefits where the plan insurer and administrator are the same. *Id.* In reviewing the denial of benefits under this approach, the court must apply a heightened abuse of discretion standard "only to the extent necessary to counteract any influence unduly resulting from the conflict" of interest. *Id.; see Doe v. Group Hospitalization and Medical Serv.,* 3 F.3d 80, 87 (4th Cir.1993).

■ In addition, Plaintiff asks the court to apply the South Carolina evidentiary presumption against a suicide and in favor of accidental death. The Fourth Circuit, however, has clearly stated that ERISA preempts state law, including state evidentiary presumptions. *See Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 566 (4th Cir.1994) ("Because the district court was correct in the conclusion that state law was preempted by ERISA and that federal common law applies, there is no need to address Jack's contentions regarding errors of South Carolina evidentiary law."). Accordingly, the court finds that the South Carolina presumption in favor of accidental death is inapplicable to this case.

**2. Analysis**

■ The court considers whether a genuine issue of material fact exists as to

---

1. The Policy gives Aetna "complete authority" to "review all denied claims for benefits under this policy." It further provides that Aetna has "discretionary authority" to "determine whether and to what extent employees and beneficiaries are entitled to benefits" and to "construe any disputed or doubtful terms of this policy." The Policy gave Aetna the right to adopt "reasonable" policies, procedures, rules and interpretations of the Policy.

2. In his own words, Plaintiff's counsel asserts that "defendant now wants to have this court assume that the 'fox' who is guarding the 'hen house' (plan administrator is an employee of the defendant) will exercise his discretion without favoritism and forget the phrase, 'Whose bread I eat, his song I shall sing.'" The court understands this to mean that Plaintiff is raising a conflict of interest argument.

whether Aetna's denial constitutes an abuse of discretion, keeping in mind that because the administrator and the insurer are the same, the record must contain substantial evidence supporting the denial and the denial must be objectively reasonable.

In its denial letter of April 18, 2005, Aetna explained that it based its decision on various documents, including a Forensic Pathology Report that showed that Mrs. Hammer had toxic levels of fluoxetine in her system. At that time, the only evidence Plaintiff had presented were the photocopies of Mrs. Hammer's prescription pill bottles. While Plaintiff's evidence showed that Mrs. Hammer was lawfully prescribed fluoxetine, it also showed that her physician had prescribed a dose of only 40 mg per day. It is not clear exactly how much and over what period of time a person would have to ingest fluoxetine to result in blood levels of 1200 ng/mL; however, the evidence available to Aetna at the time of denial clearly indicated that such high blood levels could not have been reached by taking the 40 mg daily dose prescribed by Mrs. Hammer's physician.[3] Accordingly, Aetna reasonably found that Mrs. Hammer's death resulted from the ingestion of drugs not taken as prescribed by her physician. As such, the administrator's decision to deny benefits under the exception for losses caused by "drugs, except as prescribed by a physician" was objectively reasonable and supported by

substantial evidence. Even under a heightened or modified abuse of discretion standard, the court finds that no rational trier of fact could find that there was an abuse of discretion here.

Plaintiff suggests that "the record contains no evidence that [Mrs. Hammer] intentionally did herself harm" and that perhaps Mrs. Hammer's inability to concentrate and focus, caused by her diagnosed ADHD, led "her to inadvertently ingested too much fluoxetine." Such speculation is irrelevant, however, as the record contains no indication that Plaintiff presented any evidence to Aetna that would have supported a finding of accidental overdose. Further, Aetna's decision need not be the only sensible one, so long as the decision provided reasoned explanation, based on evidence, in support of the particular outcome. *Ellis*, 126 F.3d at 232. Aetna's denial letter clearly provided the requisite explanation based on sufficient evidence.

### CONCLUSION

For the foregoing reasons, the court finds that Aetna's denial of Plaintiff's claim for accidental death and personal loss benefits was objectively reasonable and supported by the evidence; therefore, the denial is not an abuse of discretion. Accordingly, the court **ORDERS** that Aet-

---

**3.** Aetna relied upon the International Programme on Chemical Safety Poisons and Information Monograph 651 which stated that the peak blood level expected for a person taking 30 mg doses of fluoxetine should not exceed 30.1 ng/mL.

Attached to his memorandum in opposition to summary judgment, Plaintiff submits a study by the Department of Health and Human Services which states that a person taking 40 mg per day of fluoxetine, after six weeks of use, would have blood levels between 235 and 377 ng/mL. Because there is

no indication that the Department's study was before Aetna at the time it made its decision to deny benefits, the court does not consider this evidence in determining whether Aetna abused its discretion. *Stup*, 390 F.3d at 307 n. 3 ("[A] court cannot consider evidence that was not before [the administrator] when it made its determination."). Nonetheless, the court notes that, even according to Plaintiff's own evidence, Mrs. Hammer must have taken an amount of fluoxetine far in excess of the prescribed 40 mg per day in order to obtain toxic blood levels of the drug of 1200 ng/mL.

na's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**