**Robert J. WARD, Plaintiff,**

v.

**AMERICAN FAMILY LIFE ASSUR-ANCE COMPANY OF COLUM-BUS (AFLAC), Defendant.**

No. 2:05–2120–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

May 16, 2006.

William Stuart Duncan, Georgetown, SC, for Plaintiff.

David W. Overstreet, R. Michael Ethridge, Carlock Copeland Semler and Stair, Charleston, SC, for Defendant.

### ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant American Family Life Assurance Company's ("AFLAC") motion for summary judgment. For the reasons set forth herein, the court grants Defendant's motion.

### BACKGROUND

Plaintiff Robert J. Ward ("Ward") is a citizen and resident of Georgetown County, South Carolina. Defendant American Family Life Assurance Company of Columbus ("AFLAC") is an insurance company domiciled in Nebraska with policyhold-

ers in South Carolina. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

In 2001, Plaintiff sued Defendant for disability benefits under an accidental death and dismemberment policy issued by Defendant. *See Ward v. AFLAC*, 2:01–2072–18.[1] On May 14, 2002, the case settled for $100,000.00 pursuant to a written settlement agreement. The settlement agreement provided that "all sums paid in accordance with the agreement are for compensation for physical injuries and damages and/or emotional injuries and damages and are intended to compensate the Plaintiff solely for his losses suffered in connection with those injuries and damages." (Pl.Compl.Ex. A.) After payment of the settlement, Defendant filed a Form 1099–MISC with the Internal Revenue Service ("IRS"), reporting $85,600.00 of the settlement as "other income."[2] Plaintiff did not declare any of the settlement proceeds as taxable income. The IRS reviewed Plaintiff's tax return and assessed a total amount owed of $30,027.00.

On July 26, 2005, Plaintiff filed the present complaint, wherein Plaintiff asserts that under the terms of the settlement agreement, "[n]o amount of compensation for physical and emotional injuries should be reported as taxable income." (Pl. Compl.¶ 9.) Plaintiff states that he made a demand on Defendant to correct this alleged error and file an amended Form 1099–MISC, but that Defendant did not do so. Defendant asserts that it believed it had a duty to report this amount as taxable income pursuant to 26 U.S.C. § 104 and § 6041(a), and that it has no duty to amend the Form 1099–MISC filing.[3] In his complaint, Plaintiff seeks an Order from this court requiring Defendant to amend its Form 1099–MISC to reflect that no part of the proceeds of the settlement was taxable income. Defendant argues that Plaintiff's complaint fails to state a claim and that Plaintiff's sole remedy is against the IRS.

On February 23, 2006, Defendant filed a motion for summary judgment. Plaintiff filed a memorandum in opposition on March 13, 2006.

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

1. The Honorable David C. Norton presided over this case, in which Plaintiff brought a complaint for "Defendant's Bad Faith Refusal to pay Plaintiff's valid claim for benefits under an accidental death, dismemberment and disability policy." (Def.'s Mot. Ex. 1.) In addition to insurance benefits in the amount of $14,400.00, Plaintiff sought $500,000.00 in consequential damages for emotional distress and $500,000.00 in punitive damages.

2. Defendant asserts that the settlement amount consisted of $14,400.00, which equaled the excludable amount of benefits available to Plaintiff under the policy, plus an additional $85,600.00 for a total settlement amount of $100,000.00. Defendant reported the $85,600.00 as "other income."

3. 26 U.S.C. § 6041(a) provides the following:

   [a]ll persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income ... of $600 or more in any taxable year ... shall render a true and accurate return to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment.

242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

## DISCUSSION

■ In its motion for summary judgment, Defendant asserts that it had no duty under the settlement agreement to amend the IRS filing, that it had a good faith basis for the IRS filing, and that Plaintiff's dispute lies not with AFLAC, but rather, with the IRS. The court agrees with Defendant.

■ First, contract interpretation is a matter of law for the court. Here, the language of the settlement agreement is not ambiguous. The agreement itself does not forbid Defendant from filing a Form 1099–MISC reporting any income to Plaintiff. Nor does the agreement state that settlement proceeds do not constitute taxable income. Rather, the agreement states that sums paid "are for compensation for physical injuries and damages and/or emotional injuries and damages and are intended to compensate the Plaintiff solely for his losses suffered in connection with those injuries and damages." (Pl. Compl.Ex. A.) In his complaint, Plaintiff relies on this statement to assert that the "[t]he parties' settlement agreement [ ] unambiguously allocates the entire settlement amount to personal injury (non-taxable) damages."[4] In contrast, Defendant asserts that "[r]egardless of Plaintiff's tax position, AFLAC has no duty to amend its filing." (Def.'s Mot. at 7.) In support of this assertion, Defendant cites *Dusé v. IBM Corp.,* 252 F.3d 151 (2d Cir.2001).

In *Dusé,* plaintiff *Dusé* sued his former employer, IBM, claiming that it breached a settlement agreement by filing a Form 1099–MISC. 252 F.3d at 154. The facts of *Dusé* can be summarized as follows.

---

4. Pursuant to 26 U.S.C. § 104(a)(2), gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal *physical* injuries or *physical* sickness." 26 U.S.C. § 104(a)(2) (emphasis added). "Damages on account of personal injuries include payments intended to compensate for pain and suffering, lost wages recovered by an individual who cannot work due to personal injuries, medical expenses, and other consequential damages." *Ervin v. Comm'r of Internal Revenue,* 2002 WL 1150742, T.C. Memo.2002–134, *3 (T.C.2002) (citing *Comm'r v. Schleier,* 515 U.S. 323, 329, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995)). "The taxpayer seeking to exclude money damages from income bears the burden of proving that the exclusion applies." *Rivera v. Baker West, Inc.,* 430 F.3d 1253, 1256 (9th Cir.2005) (citing *Comm'r v. Schleier,* 515 U.S. 323, 329, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995)).

Dusé and IBM entered into a settlement agreement to settle all of *Dusé's* employment discrimination claims against IBM. The terms of the settlement agreement provided that the payment did not constitute wages. *Id.* at 153. The agreement stated: "Rather, the payment constitutes compensation for personal injuries, emotional distress and pain and suffering *and therefore is not subject to withholding taxes.*" *Id.* (emphasis added). The confidentiality clause of the agreement stated that IBM agrees not to disclose the amount of the payment "except as may be required by law or by business necessity." *Id.* at 154. IBM filed a Form 1099–MISC, reporting as "Miscellaneous Income" the amount paid pursuant to the settlement agreement. *Id.* Thereafter, *Dusé* filed suit, alleging that IBM breached the terms of the settlement agreement. *Id.* Ultimately, the Second Circuit Court of Appeals found that IBM's filing of the Form 1099–MISC, although not required, did not breach the terms of the settlement agreement. *Id.* at 158. The court stated:

> The language of the Settlement Agreement in the present case is unambiguous. The Agreement did not by its terms forbid IBM to file a Form 1099. Indeed, *Dusé* himself admitted as much in an affidavit he submitted in opposition to summary judgment, as he noted that his attorney did "not insist [ ] that the settlement agreement be drafted in language sufficiently clear and precise to preclude such an action by IBM." The Settlement Agreement stated merely that IBM would not disclose the amount paid "except as may be required by law or by any business necessity." The contract does not appear to be unclear; what may have been unclear was the law.

*Id.* (internal citations omitted). The court also noted that the Internal Revenue Code imposes potentially severe penalties on a person who does not file a required information return. *Id.* at 159.

Here, in response to Defendant's argument, Plaintiff asserts that *Dusé* is distinguishable because *Dusé* involved the settlement of a racial discrimination lawsuit, and because *Dusé's* injuries for emotional distress were not excluded from taxation. Plaintiff asserts that in his situation, the settlement compensated him for physical injuries, and any emotional injuries were directly attributable to those physical injuries. Additionally, Plaintiff asserts that none of the proceeds were designated as punitive damages.

Ultimately, although the underlying facts of *Dusé* are distinguishable, the court nevertheless finds the case instructive. For instance, although *Dusé* involved a racial discrimination lawsuit, which is inherently different from a claim for bad faith refusal to pay an insurance claim, it is interesting to note that the court in *Dusé* actually found Defendant IBM's filing of the Form 1099 to be a business necessity, even where the terms of the settlement agreement expressly provided that the payment *"is not subject to withholding taxes."* 252 F.3d at 153 (emphasis added).

▌ Here, the settlement agreement provided that "all sums paid in accordance with the agreement are for compensation for physical injuries and damages and/or emotional injuries and damages and are intended to compensate the Plaintiff solely for his losses suffered in connection with those injuries and damages." (Pl. Compl.Ex. A.) The agreement did not go so far as to state that the payment is not subject to withholding taxes. Nor did the agreement expressly forbid the filing of the Form 1099–MISC. Moreover, as Defendant points out, the settlement agreement states that the sums paid "are for compensation for physical injuries and damages *and/or emotional injuries and*

damages." (Pl.Compl.Ex. A.) (emphasis added). Although Plaintiff may be correct in asserting that these damages stem directly from the physical injuries, the settlement agreement does not so provide, and it is not Defendant's duty to determine the potential taxability of those emotional damages.[5] Furthermore, even though the settlement agreement does not designate any damages as punitive in nature, it is clear that Plaintiff sought $500,000.00 in punitive damages in the underlying lawsuit. Ultimately, the court finds that Defendant did not breach the settlement agreement by filing the Form 1099–MISC. In fact, given the lack of instruction regarding the Form 1099 in the settlement agreement, the potential penalties for the failure to file a required information return, and the fact that the ultimate decision of taxability rests with the IRS and *not* Defendant, the court finds Defendant's decision to report the $85,600.00 (the amount of the settlement over the amount of available benefits) entirely reasonable.[6] Accordingly, the court is not willing to order Defendant to file an amended Form 1099–MISC.

**5.** Section 104(a)(2) was amended in 1996 "to make clear that only damages for *physical* injuries and sickness, and not damages for emotional distress, were excluded from the definition of income." *Rivera v. Baker West, Inc.*, 430 F.3d 1253, 1256 (9th Cir.2005) (emphasis added); *see also Mayberry v. U.S.*, 151 F.3d 855, 858, n. 2 (8th Cir.1998) ("Section 104(a)(2) was amended in 1996 to exclude 'emotional distress' damages from the gross income exclusion.").

**6.** As a practical matter, the court actually has some concerns regarding the justiciability of Plaintiff's claim against Defendant, given that the relief sought by Plaintiff, namely an Order from this court requiring Defendant to file an amended Form 1099–MISC, would not necessarily affect the IRS's determination of Plaintiff's tax liability. In other words, it is clear that to satisfy Article III's "case or controver-

## CONCLUSION

It is therefore, **ORDERED**, for the foregoing reasons, that Defendant's motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

sy" requirement, a plaintiff must show that he personally has suffered an actual or threatened injury *and* that the relief he seeks is likely to remedy his injury. Because the filing of an amended Form 1099–MISC by Defendant may have absolutely no effect on the IRS's determination of Plaintiff's tax liability, the justiciability of Plaintiff's claim is questionable. Moreover, as Defendant points out, 26 U.S.C. § 6201(d) shifts the burden from the taxpayer to the Secretary when a taxpayer asserts a reasonable dispute with respect to any income reported on an information return filed with the Secretary. Ultimately, therefore, the court believes that Plaintiff's proper recourse is to pursue all levels of appeal with the IRS, as it is the Secretary who "bears the burden of producing reasonable and probative information concerning such deficiency in addition to such information return." 26 U.S.C. § 6201(d).