NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0076n.06

Case No. 14-3419

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 26, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HENRY MCCLUSKY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT |
| CENTURY BANK, FSB, nka Iberiabank, | ) | OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SUHRHEINRICH and GRIFFIN, Circuit Judges; and LEITMAN, District Judge.*

LEITMAN, District Judge. In 2011, Plaintiff-Appellee Henry McClusky ("McClusky") and Defendant-Appellant Century Bank, FSB, n/k/a Iberiabank ("Century Bank") agreed to resolve state-court litigation between them. They memorialized their agreement in an "Amended Judgment Entry – Settlement Order" (the "Settlement Order") that the state court entered at their mutual request. Century Bank believed that the Settlement Order canceled $159,478.87 of debt owed by McClusky. Accordingly, it issued an Internal Revenue Service ("IRS") Form 1099-C to McClusky reflecting the cancellation of that debt (the "McClusky 1099"). McClusky then brought this breach of contract action, alleging that Century Bank violated the Settlement Order – which the parties agree is a binding contract – by issuing the McClusky 1099. The district court granted summary judgment in favor of McClusky on his contract claim.

_____

*The Honorable Matthew F. Leitman, United States District Judge for the Eastern District of Michigan, sitting by designation.

The district court believed, and the parties now contend, that resolution of McClusky's contract claim turns upon a question of federal tax law: whether Century Bank acted in accordance with the Internal Revenue Code when it issued the McClusky 1099 based on its determination that the entry of the Settlement Order resulted in "income" to McClusky. We view this case much differently. We believe that the determination of McClusky's contract claim depends upon the plain language of the Settlement Order, not federal tax law. The Settlement Order plainly did not prohibit Century Bank from issuing the McClusky 1099; indeed, it said nothing about tax treatment or tax reporting issues. Thus, McClusky's claim that Century Bank breached the Settlement Order by issuing the McClusky 1099 fails as a matter of law. We REVERSE the judgment of the district court and REMAND for entry of judgment in favor of Century Bank.

## I.  Background

On November 14, 2005, McClusky obtained a loan from First Place Bank ("First Place") to purchase real property located at 7444 Welbley Street in Blacklick, Ohio (the "Property"). As part of the transaction, McClusky executed a promissory note to First Place in the amount of $527,992. The loan was secured by a mortgage on the Property that named First Place as the mortgagee. Thereafter, Century Bank acquired the mortgage. McClusky eventually defaulted on the loan, and on December 14, 2009, Century Bank initiated foreclosure proceedings in the Common Pleas Court of Franklin County, Ohio (the "State Court").

On June 1, 2010, the State Court entered a judgment against McClusky in the amount of $524,478.87, plus interest and late fees (the "Judgment"). In addition, the State Court ordered the Sheriff of Franklin County to sell the Property. Century Bank assigned its right to bid at the sheriff's sale to CB Florida RRE Holdings, LLC ("CB Florida"). On September 10, 2010, CB

Florida purchased the Property at the sheriff's sale for $280,000. After accounting for fees and costs, the State Court credited McClusky $269,557.90 toward the balance that he owed Century Bank on the Judgment.

On June 1, 2011, McClusky, through retained counsel, filed a motion in the State Court to set aside the Judgment on the ground that Century Bank had failed to mitigate its damages. McClusky asserted that, prior to the sheriff's sale, Century Bank had received two offers to purchase the Property for $435,000 and $372,000, respectively. McClusky argued that (1) Century Bank had unreasonably failed to pursue those offers and (2) because the winning bid at the sheriff's sale was substantially less than the other offers Century Bank had received, the credit that the State Court applied toward the balance McClusky owed on the Judgment was too low.

Century Bank and McClusky ultimately agreed to resolve McClusky's motion to set aside the Judgment. As part of that resolution, McClusky agreed to pay Century Bank $5,000, and Century Bank agreed to negate the portion of the Judgment reflecting amounts owed by McClusky. The parties memorialized their agreement by stipulating to the entry of the Settlement Order, which contained the following terms:

> 1) For good and valuable consideration, the receipt of which Plaintiff, Century Bank, n/k/a Iberia Bank, Successor to Century Bank, FSB by Receivership from the FDIC, acknowledges, the deficiency judgment as to Defendants, Henry McClusky and Mojgan E. McClusky (as to her dower interest only) has been resolved and settled among the parties, in total; and
>
> 2) Any such deficiency judgment as to Defendant, Henry McClusky, is hereby released and/or vacated.

Following the entry of the Settlement Order, Century Bank issued the McClusky 1099 to both McClusky and the IRS. On that form, Century Bank indicated that it had cancelled

$159,478.87 in debt owed by McClusky.[1]  It appears that McClusky included that amount in the gross income he reported on his 2011 federal tax return.  McClusky says that the additional $159,478.87 in reported income increased his 2011 tax liability by $68,660.

After paying his 2011 federal taxes, McClusky filed this action against Century Bank in the State Court.  McClusky alleged that Century Bank breached the Settlement Order when it issued the McClusky 1099.  Century Bank removed the action to the United States District Court for the Southern District of Ohio.  Both parties moved for summary judgment.

The district court granted summary judgment in favor of McClusky on his contract claim.[2]  The court explained that resolution of that claim "necessitate[d] evaluation of income tax law and terms of art utilized in that area of law."  The court believed that the "contested liability doctrine" was particularly relevant.  That doctrine provides that, under certain circumstances, the settlement of a debt that is disputed in good faith will not result in "income" to the purported debtor.  *See, e.g.*, *Zarin v. Comm'r of Internal Revenue*, 916 F.2d 110, 115 (3d Cir. 1990) ("Under the contested liability doctrine, if a taxpayer, in good faith, disputed the amount of a debt, a subsequent settlement of the dispute would be treated as the amount of debt cognizable for tax purposes. The excess of the original debt over the amount determined to have been due is disregarded [in calculating gross income].").  The court reasoned that because McClusky contested the amount of the debt that was negated by the Settlement Order, that order did not result in "income" to McClusky.  The court then concluded that because the Settlement Order did

---

[1]The record does not clearly indicate how Century Bank calculated the amount of cancelled debt that it reported on the McClusky 1099.

[2]The district court entered judgment in favor of Century Bank on three other claims brought by McClusky.  McClusky did not cross-appeal the district court's judgment on these claims.  Accordingly, these additional claims are not before us and are not at issue in this appeal.

not result in income to McClusky, Century Bank breached the order by issuing the McClusky 1099.

Century Bank now appeals the district court's judgment in favor of McClusky on his breach of contract claim.

## II. Standard of Review

We review a district court's order granting summary judgment *de novo*. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "The moving party bears the burden of proving that there are no genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. Analysis

In resolving McClusky's contract claim in this diversity action, "we are obliged to apply the substantive law of the forum state, Ohio, in accordance with the controlling decisions of its highest court." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). A straightforward application of Ohio contract law to the Settlement Order – which the parties agree is a valid contract – confirms that the order did not prohibit Century Bank from filing the McClusky 1099.

"Under Ohio law, '[w]hen confronted with an issue of contract interpretation, [a court's] role is to give effect to the intent of the parties." *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011)). That intent is "presume[d]" to be "reflected in the language of the contract." *Id.* Thus, "[w]hen the language of a written contract is clear, a court may look no

further than the writing itself to find the intent of the parties." *Id.* As the Ohio Supreme Court has emphasized, where "the parties following negotiations make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides." *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co., f/k/a Hosp. Care Corp.*, 544 N.E.2d 920, 924 (Ohio 1989). Thus, a court may not "rewrite the parties' contract" to give it a meaning other than and/or beyond that expressed in its unambiguous language. *Id*.

The Settlement Order consisted of two short, clear sentences. Therein, Century Bank did only two things: (1) it "acknowledge[d]" that the "deficiency judgment" against McClusky had been "settled among the parties, in total," and (2) it agreed that the deficiency judgment was "resolved and/or vacated." That's it. And it is undisputed that Century Bank has not made any effort to resuscitate McClusky's debt, has not taken any action that indicates to anyone or any entity that McClusky remains indebted to Century Bank, and has not made any effort to collect any debt from McClusky. Thus, Century Bank has not breached the Settlement Order.

McClusky nonetheless insists, and the district court held, that Century Bank breached the Settlement Order by issuing the McClusky 1099. We disagree. The Settlement Order says *nothing* about how each party would treat the transaction memorialized in the Settlement Order for tax purposes nor about how (or whether) each party would report the transaction to the IRS. Given the complete absence of any reference to tax reporting issues, the Settlement Order cannot be read as precluding Century Bank from issuing the McClusky 1099. Indeed, it would violate Ohio's fundamental rules of contract interpretation to read into the Settlement Order a limitation on Century Bank's conduct that the order simply does not contain. *See, e.g., Aultman Hosp.*

*Ass'n, supra* (refusing to read into a contract a limitation on one party's conduct that exceeded the "only limitation" that was "expressly provided in the agreement between the parties").

This case is similar to *Ward v. Am. Family Life Ins. Co. of Columbus*, 444 F.Supp.2d 540 (D. S.C. 2006), in which the court refused to read into a settlement agreement a prohibition against the filing of a Form 1099. The defendant in *Ward* had previously paid $100,000 to settle a claim by the plaintiff for disability benefits under an accidental death and dismemberment insurance policy. In relevant part, the settlement agreement provided that "all sums paid in accordance with the agreement are for compensation for physical injuries and damages and/or emotional injuries and damages and are intended to compensate the Plaintiff solely for his losses suffered in connection with those injuries and damages." *Ward*, 444 F.Supp.2d at 541. The defendant later filed a Form 1099-MISC with the IRS, reporting $85,600 of the settlement as "other income" to the plaintiff. The plaintiff then sued the defendant, arguing that the issuance of the Form 1099-MISC breached the parties' settlement agreement because the reported funds were not taxable income. The court granted summary judgment in favor of the defendant because the parties' agreement did not prohibit the defendant from filing the Form 1099-MISC:

> Here, the language of the settlement agreement is not ambiguous. The agreement itself does not forbid Defendant from filing a Form 1099-MISC reporting any income to Plaintiff. Nor does the agreement state that settlement proceeds do not constitute taxable income.
>
> ***
>
> The agreement did not go so far as to state that the payment is not subject to withholding taxes. Nor did the agreement expressly forbid the filing of the Form 1099-MISC.
>
> ***
>
> Ultimately, the court finds that Defendant did not breach the settlement agreement by filing the Form 1099-MISC. In fact, given the lack of instruction regarding the

> Form 1999 in the settlement agreement, the potential penalties for the failure to file a required information return, and the fact that the ultimate decision of taxability rests with the IRS and *not* Defendant, the court finds that Defendant's decision to report the $85,600.00 … entirely reasonable.

*Id.* at 542, 544. As in *Ward*, the Settlement Order makes no reference to tax reporting/treatment issues. Accordingly, there is no basis to read the order as precluding Century Bank from filing the McClusky 1099.

The absence of any reference to tax treatment/reporting issues in the Settlement Order is especially significant because it is common practice for parties to address these matters in settlement agreements when the parties have, in fact, agreed upon them. Indeed, one treatise on Ohio law advises Ohio attorneys drafting a settlement agreement to specify the tax consequences that the parties intend to govern the agreement. *See* 5A *Ohio Jurisprudence 3d*, Alternative Dispute Resolution, Section 120 (instructing attorneys to "think ahead about the terms required in a settlement agreement, *such as … tax treatment*….") (emphasis added). Another general treatise on commercial litigation offers a sample "tax treatment provision" for settlement agreements. *See* 3 *Business and Commercial Litigation in Federal Courts* (3d Ed.), Section 33:120. Against this background, it is most reasonable to conclude that if the parties here had, in fact, reached an agreement on tax treatment/reporting matters, they would have clearly expressed that agreement in the Settlement Order. Since that order said nothing about tax treatment/reporting issues, it did not embody an enforceable agreement by Century Bank not to file the McClusky 1099.

The district court erred when, at the parties' urging, it went beyond the plain language of the Settlement Order and resolved McClusky's contract claim based upon its "evaluation of income tax law and terms of art utilized in that area of the law." It may be appropriate for a

federal court facing a contract claim like McClusky's to consider tax laws *where the language of the parties' settlement agreement makes those laws relevant*. But that was not the case here. The decision of the United States Court of Appeals for the Second Circuit in *Duse v. Int'l Bus. Mach. Corp.*, 252 F.3d 151 (2d Cir. 2001), provides an instructive comparison. In *Duse*, the plaintiff alleged that International Business Machine Corporation ("IBM") breached a settlement agreement by issuing an IRS Form 1099 reporting the amount of the settlement payment as income to the plaintiff. The settlement did not expressly prohibit IBM from filing a Form 1099. However, it did provide that the settlement payment was "not subject to withholding taxes" and, more importantly, that IBM would not disclose the amount of the settlement "*except as may be required by law* or business necessity." *Id.* at 153-54 (emphasis added). Following the settlement, IBM issued a Form 1099 to Duse and the IRS. Duse sued IBM, claiming that the company breached the non-disclosure provision of the settlement agreement.

The Second Circuit affirmed the entry of summary judgment against Duse. The court conducted a careful analysis of the relevant provisions of the Internal Revenue Code and controlling tax-related decisions of the United States Supreme Court. Based on that analysis, the court concluded that IBM did not breach the agreement by filing the Form 1099 because the company had a good faith basis to believe that it was "required by law" to file the form. Critically, the court reviewed the tax laws and decisions *because the plain language of the parties' settlement agreement expressly tied IBM's authority to disclose the settlement payment to the requirements of the "law," including, of course, federal tax law*. In sharp contrast to the settlement agreement in *Duse*, the Settlement Order contained no language tying Century Bank's authority to report the settlement payment to federal tax law. Thus, unlike in *Duse*, there was no basis here to resolve McClusky's contract claim by reference to federal tax law.

In sum, because the plain language of the Settlement Order did not prohibit Century Bank from reporting its transaction with McClusky to the IRS, Century Bank did not breach the order by filing the McClusky 1099. Accordingly, Century Bank, not McClusky, was entitled to summary judgment on McClusky's breach of contract claim.[3]

## IV. Conclusion

For all of the reasons discussed above, we REVERSE and REMAND for entry of judgment in favor of Century Bank.

---

[3]We express no view on whether the $159,478.87 that Century Bank reported on the McClusky 1099 constituted "income" to McClusky under federal tax law.